778 P.2d 266

**In the Matter of the Appeal in PIMA COUNTY JUVENILE DEPENDENCY ACTION NO. 98874.**

**No. 2 CA–JV 89–0012.**

Court of Appeals of Arizona, Division 2, Department A.

Aug. 15, 1989.

Law Offices of Catherene Morton Ryers, P.C. by Amy Z. Hubbell, Tucson, for Natural Father.

Ann M. Haralambie, P.C. by Ann M. Haralambie, Tucson, for Minor.

Paul F. Tosca, Tucson, for Natural Mother.

Scott E. Myers, Tucson, for Maternal Grandparents.

## OPINION

HATHAWAY, Judge.

This appeal is taken by the natural father from the order of the juvenile court adjudicating the minor dependent as to him. The relevant facts are as follows. When the natural mother was approximately 17 years old, she ran away from home with the natural father and lived with him and his wife in Utah, where she became pregnant with the minor who is the subject of this dependency. The evidence established that the mother suffers from a learning disability, which adversely affects both her learning and memory skills. Her parents (grandparents) were declared her guardians in Utah judicial proceedings and obtained her custody and returned with her to Tucson.

Approximately one month after their return, the father was arrested in Tucson on charges of attempted kidnapping, arising out of his offer to pay an undercover police officer $1,000 to commit the act. Pursuant to a plea bargain, he pled guilty to conspiracy to commit a class 6 felony, but absconded prior to sentencing.

The minor was born September 27, 1987. The father had no contact with the minor or her mother until February 1988, when, armed with a knife, he forced his way into the grandparents' house, and took the infant after binding and gagging the grandfather. The father apparently then gave the infant to his wife, who fled to Canada to avoid extradition. The father was arrested in Tucson on March 8, 1988, and the minor was later returned to the mother and grandparents.

The dependency petition in this case was filed by the grandparents in April 1988. In addition to alleging the father's kidnapping of the minor and her mother, the petition stated that the father had failed to provide any support for the minor since her birth. The petition further alleged that the mother "is mentally unable to care for herself or the child because of significant intellectual deficiencies." The hearing on the dependency was not held until January 1989. At that time, the father was serving a 21–month sentence on the conviction for attempt to commit a class 6 felony and was awaiting trial on charges stemming from the attempted kidnapping. Counsel for the mother stipulated to a finding of dependency as to her and, following three days of hearings, the juvenile court found the minor dependent as to the father.

■ On appeal, the father raises numerous issues, none of which requires reversal. The first pertains to the authority of the juvenile court to entertain and adjudicate a dependency petition without the intervention of the Department of Economic Security. In contrast to delinquency and severance matters, nothing in the statutes or rules governing dependency proceedings sets forth or limits in any way who may be a party to such a proceeding. Although A.R.S. § 8–546.01(C) requires child protective services workers to investigate and evaluate conditions alleged to create a dependency and to file reports with the juvenile court, we do not construe this statute as a limitation on the jurisdiction of the juvenile court. The only prerequisite to the juvenile court's authority to adjudicate a child dependent and to make an appropriate disposition is its finding, after notice and hearing, that the requirements of A.R.S. § 8–201(11) have been established. We see no impediment to the filing of an appropriate petition by the minor's grandparents, nor any reason to limit the standing to file such petitions to the Department of Economic Security.

The father also claims that the lack of DES involvement rendered the proceedings unfair and not in the child's best interests. Having failed to raise this argument at any point before the juvenile court, it is waived. Moreover, we fail to see how the father was prejudiced since, as discussed below, he was permitted to present evidence as to alternative placements for the child. The disposition ultimately ordered by the court was that for which he had contended: placement with the mother with monitoring

by the Court Appointed Special Advocate (CASA).

The father next contends that the juvenile court erred in refusing to continue the dependency hearing until after the resolution of his pending criminal charges. We reject this contention for three reasons. First, no specific request for a continuance on this ground was raised below. Second, the dependency had been pending for over nine months, and the juvenile court acted properly in proceeding in order to protect the child's interests. Third, assuming that the father were released from prison on the original conviction and acquitted on the subsequent charges, he could then petition for the termination of the dependency proceedings. The juvenile court properly acted to protect the minor in the interim, rather than waiting until some uncertain date in the future when the father might be in a position to care for the minor.

The father also contests the juvenile court's finding of a dependency as to him. First, he challenges the propriety of the finding of dependency when the order of disposition was placement in accordance with the father's request. What the father ignores is that, absent a finding of dependency, the juvenile court had no authority to order any placement or to monitor the conditions of the placement. The mere fact that the placement ordered comports with the father's wishes does not mean that the child is not dependent within the meaning of § 8–201(11). Second, the father argues that the length of his incarceration does not prevent him from providing proper care for his child through placement with third parties. Even assuming that the father is correct in his contention that he would be released from prison within two months following the dependency hearing and that he would successfully resolve the pending charges, he still has not shown that the minor has a parent capable of exercising proper and effective parental care and control. A.R.S. § 8–201(11). A voluntary placement of the child with persons under no legal obligation to provide for the child is not sufficient to negate the basis for the finding of dependency.

Next, the father contends that the juvenile court erred in accepting the mother's stipulation to a finding of dependency as to her because it was contrary to her own testimony and the only basis for the adjudication as to the father. Assuming without deciding that the record must provide a factual basis for an admission of dependency, there was sufficient evidence in this case to find the minor dependent as to the mother. We see no need to review the mother's testimony in detail. Contrary to the father's arguments, her own testimony provided a factual basis for her stipulation to a finding of dependency, with respect to her inability to provide and care for herself as well as her child.

The father also claims error in the juvenile court's refusal to admit certain police reports as probative of the reasonableness of the father's belief that the grandparents were abusing the mother and that the minor was therefore in danger. These reports pertained to incidents occurring prior to the birth of the minor and were merely cumulative of the father's own testimony. We find no error.

He also contends that the juvenile court erred in refusing to admit DES reports concerning a referral of the grandparents arising from an incident in which the grandfather had hit the mother with a belt. These records were reviewed by the CASA witness and used as the basis for her opinion that the minor's placement with the grandparents should be subject to monthly monitoring. The juvenile court excluded the records on the ground that they were hearsay. The court had ruled that the witness was qualified to give an opinion not as to the appropriate placement of the minor, but only as to whether monitoring of the placement should be required. Although such records were admissible to show the basis for her opinion, *Lynn v. Helitec Corp.*, 144 Ariz. 564, 698 P.2d 1283 (App.1984), since all parties were agreed that monitoring was appropriate we fail to see any prejudice to the father by the court's refusal to admit them. No other basis for their admissibility was offered by the father. The same argument is raised

with respect to portions of a deposition given by the grandfather. However, the witness testified that she did not rely on the deposition in forming her opinion. Accordingly, the juvenile court did not err in excluding this evidence.

The father also complains that the juvenile court erred in refusing to hear testimony from Paula Badger, an acquaintance of the father who offered to take the child in her home. In fact, the court did hear her testimony, but apparently concluded that placement of the child with her would be inappropriate. In light of the fact that Ms. Badger barely knew the father and had never met the child, we find no abuse of discretion.

Finding that the record fully supports the juvenile court's adjudication of dependency, we affirm.

FERNANDEZ, C.J., and HOWARD, J., concur.