845 P.2d 1129

**In the Matter of the Appeal in MARICOPA COUNTY JUVENILE ACTION NO. JD–05401.**

**No. 1 CA–JV 92–0010.**

Court of Appeals of Arizona,
Division 1, Department B.

Jan. 26, 1993.

Kessler & Doyle by Eric W. Kessler and Michael J. Doyle, Mesa, for appellant Mother.

Carmichael & Powell, P.C. by Laurence B. Stevens and Brian A. Hatch, Phoenix, for appellant Maternal Grandparents.

Friedl, Richter & Buri by Joseph C. Richter, Phoenix, for appellee Paternal Grandparents.

Theut, Theut & Theut by Christopher P. Theut and David M. Theut, Phoenix, for Minor Child.

## OPINION

JACOBSON, Judge.

The primary issue on appeal is whether the juvenile court may award long-term joint custody to a minor child's grandparents under authority of A.R.S. § 25–331 without making a determination of dependency under A.R.S. § 8–201(11)(a). The secondary issue is whether the mother's delegation of parental authority to the child's maternal grandmother under A.R.S. § 14–5104 made her a "guardian" willing and capable of caring for the child, thus precluding a finding of dependency under A.R.S. § 8–201(11)(a) and requiring a dismissal of the pending dependency petition as a matter of law.

### FACTUAL AND PROCEDURAL BACKGROUND

In June 1989, shortly after the minor child's first birthday, his father was brutally murdered while the child and his parents were living with his paternal grandparents. A few weeks later, the child's mother was arrested for her participation in the crime. She was subsequently convicted of second degree murder, and was sentenced to imprisonment for eighteen calendar years.

On July 31, 1989, the paternal grandparents filed a dependency petition in juvenile court, alleging that the child was dependent because he had "no parent" capable of exercising care and control over him, as his father was deceased and his mother was in jail. On August 8, 1989, the court ordered that the child be made a ward of the court and placed in the care, custody, and control of his paternal grandparents pending a dependency hearing.[1] That same day, August 8, 1989, while in custody and before she had been served with notice of the dependency petition, the mother executed a "Revocable Power of Attorney Delegating Parental Rights Over Minor Child (A.R.S.

---

1. The record is conflicting about when the child was first made a ward of the court. The August 8, 1989, minute entry appears to be the first indication in the record before us that the juvenile court invoked its jurisdiction and entered temporary orders pending a hearing. However, the minute entry from the "five-day hearing" on August 28, 1989, indicates that an initial commitment order placing the child in the custody of his paternal grandparents was signed on Au-

gust 1, 1989. The accuracy of this date would become relevant only if we concluded that the mother's delegation of parental authority created a "guardianship" that would defeat a statutory allegation of dependency if created prior to the time the child became a ward of the court. Because we do not find such a guardianship was created, no "race to the courthouse" argument is involved regarding this date.

Section 14–5104)," purporting to delegate to her mother, the child's maternal grandmother, "all of my powers regarding the care and custody" of the minor child.

The maternal grandparents, as third-party intervenors, moved to dismiss the dependency petition on the ground that it failed to state a claim under A.R.S. § 8–201(11)(a) because it failed to allege the absence of an appropriate guardian. The court dismissed the petition for that reason, allowing the paternal grandparents leave to file an amended petition. On September 27, 1989, the paternal grandparents filed an amended petition with the additional allegation that the child had no "guardian," and on September 29, 1989, the court again entered an order making the child a temporary ward of the court and placing him in the temporary custody of his paternal grandparents pending a dependency hearing.

Relying on the revocable power of attorney from the mother, the maternal grandparents again moved to dismiss the petition, asserting that the mother's delegation of parental authority to the maternal grandmother made her a "guardian" as a matter of law, and absent an allegation of her inability to care for the child, "dependency" could not be proved. At the initial dependency commitment hearing on October 17, 1989, the court took under advisement the issue whether the revocable power of attorney controlled the issue of dependency, and subsequently ruled that it did not.

On June 6, 1990, at the start of the contested commitment trial, the parties informed the court that they had reached a stipulation regarding the care and custody of the child. The court approved the agreement, ordered the parties to abide by its terms and to submit a formal order for signature, and set the matter for a report and review hearing in one year.

The formal custody order, signed by the court on September 17, 1990, provided for a joint custody arrangement, with the paternal grandparents to be primary residential custodians and the maternal grandparents to have specified visitation.[2] The parties were to consult with each other on all major decisions regarding the child, and were required to submit any disagreements to a supervising psychologist, "whose decision shall be final." Paragraph 6 of the order provided:

> This matter shall be set for Report and Review by this Court not less than once per year. Any grandparent may petition for a Report and Review at an earlier date if deemed necessary for [the child's] best interests or to enforce or resolve any of the terms of this Order. The supervising psychologist shall provide a written report to all parties one week prior to the Report and Review with his summary of the status and recommendations.

The order made no finding that the child was dependent. The order also did not state whether the child was to continue as a ward of the court, nor did it dismiss the pending dependency petition.

The parties abided by the terms of the stipulated order until February 1991, when the supervising psychologist recommended that the custodial schedule be reversed, with the child in the primary custodial care of the maternal grandparents and with visitation to the paternal grandparents. The psychologist, noting that a report and review hearing was set for June 6, 1991, recommended a transitional visitation scheme between mid-April and the hearing, to ease the child into his new primary home. When the paternal grandparents indicated that they did not intend to comply with those recommendations, the maternal grandparents filed a "Petition for Order to Show Cause in re Enforcement of Order and Contempt," asking the juvenile court to issue an order to show cause why the September 17, 1990, order should not be

---

**2.** Other provisions concerning specific stipulations were included, but we do not find them relevant to this appeal.

enforced to transfer primary residential care to them in accordance with the stipulated binding recommendation of the supervising psychologist.

The paternal grandparents moved to continue the review hearing because of alleged bias by the supervising psychologist. After the supervising psychologist admitted a potential conflict of interest and withdrew, the court appointed another psychologist, who ultimately recommended that the existing custody arrangement be maintained.

After a four-day evidentiary hearing, the court entered an "Amended Joint Custody Order," which dismissed the maternal grandparents' petition for an order to show cause, and, upon stipulation of counsel, again ordered joint custody with the paternal grandparents as primary custodians and with specified visitation to the maternal grandparents. The order suggested that the parties maintain an ongoing relationship with a psychologist for advice on childrearing, but did not require that they abide by a binding professional decision, a condition to which they had not stipulated. The order also stated:

> A pre-set "appointment," such as an annual "report and review," is not required. To schedule a review hearing a year from now is an invitation to keep the war alive. *This case should proceed in the manner of a conventional custody case with an expectation of closure.*

(Emphasis added.) The order further provided that "[this] custody arrangement is a 'custody decree' under A.R.S. § 25–331 *et seq.* and shall be construed accordingly." Like the September 17, 1990, order, this order did not contain an adjudication that the child was dependent under A.R.S. § 8–201(11); neither did it dismiss the dependency petition.

The mother and maternal grandparents (appellants) timely appealed. Counsel for the child has joined in the paternal grandparents' pleadings.

## DISCUSSION

### A. *Appellate Jurisdiction*

As an initial matter, we address the paternal grandparents' contention that this appeal involves review of interlocutory orders that are beyond our subject matter jurisdiction.

First, although appellants argue as a legal issue on appeal that the juvenile court erred in denying their motion to dismiss, they have not brought this action as an appeal from that interlocutory order, which would be impermissible. *See Northern Propane Gas Co. v. Kipps*, 127 Ariz. 522, 525, 622 P.2d 469, 472 (1980). Rather, they argue as a legal premise that the same grounds argued in support of dismissal—priority of the delegation of parental rights under A.R.S. § 14–5104—should have precluded the result the court reached in the final, appealable joint custody order. We therefore do not find this to be an improper appeal from a denial of a motion to dismiss.

Alternatively, the paternal grandparents argue that we have no subject matter jurisdiction over this appeal as it is from an order adjudicating contempt. *See, e.g., Pace v. Pace*, 128 Ariz. 455, 626 P.2d 619 (App.1981) (this court has no appellate jurisdiction over domestic relations ruling on petition for order to show cause re contempt). Although the maternal grandparents' petition was titled "Petition for Order to Show Cause in re Enforcement of Order and Contempt," it was, in essence, a proceeding for change of custody based on the provisions of paragraph 6 of the court's prior order, which allowed the parties to petition for a report and review to enforce or resolve any of the terms of that order.

The order before us in this appeal purports to be a final and permanent child custody disposition, made after a one-year review of the prior custody order. Our supreme court has held such an order appealable:

> From a practical perspective, each periodic review of a dependency determination is a new determination of whether or not a child is dependent. Therefore, ... orders reaffirming findings ... are final orders subject to appeal by aggrieved

parties. A parent denied and redenied control over his or her children must have the right to appeal the initial and subsequent denials.

*In re Appeal in Yavapai County Juv. Action No. J–8545,* 140 Ariz. 10, 14, 680 P.2d 146, 150 (1984). The court noted that it was irrelevant if the order appealed from was a determination of dependency or was merely an award of custody; both affect fundamental rights of a parent, and each is "a final order subject to appeal by an aggrieved party." *Id.* at 14–15, 680 P.2d at 150–51.

The order in this case clearly deprives the mother and her designee of the right to custody, and is thus an appealable order. We therefore conclude that we have proper subject matter jurisdiction to consider this appeal.

## B. *Effect of Delegation of Parental Authority*

Appellants argue that the effect of the mother's execution of a revocable power of attorney on August 8, 1989, delegating her parental authority over the child to the maternal grandmother, was to create a guardianship that would preclude the court from finding the child dependent within the meaning of A.R.S. § 8–201(11)(a).[3] The mother's revocable power of attorney, which the parties agree has been renewed every six months since its execution, was based on the statutory authority of A.R.S. § 14–5104, which provides:

A parent or a guardian of a minor or incapacitated person, by a properly executed power of attorney, may delegate to another person, for a period not exceeding six months, any powers he may have

regarding care, custody or property of the minor child or ward, except power to consent to marriage or adoption of the minor.

■■■ We have previously held that a power of attorney under this provision is irrelevant to Title 8 proceedings involving preadoption custody. *In re Appeal in Maricopa County Juv. Action No. A–20917,* 23 Ariz.App. 503, 504–05, 534 P.2d 434, 435–36 (1975). We pointed out that A.R.S. § 14–5104, which may involve a temporary custody delegation, "is an authorization for a temporary *non-guardianship* arrangement." *Id.* at 505, 534 P.2d at 436 (emphasis added). The statutory delegation of authority in that case did not allow a parent to choose a child's preadoption placement; neither does it in this case authorize a child's placement in the context of a dependency proceeding. At most it might be considered by the trier of fact as some evidence as to the child's appropriate placement either pending a dependency determination or after the child is found dependent. However, it is well established that the filing of a dependency petition gives the juvenile court authority that is superior to the mother's rights to award temporary custody of the child, and which includes the right to supervise the child's placement. *In re Maricopa County Juv. Action No. JD–500200,* 163 Ariz. 457, 788 P.2d 1208 (App.1989).

■■■ The only statutory method by which the maternal grandparents could assert a guardianship relation with the child that would on its face defeat the allegations of dependency in this case would be by acceptance of a testamentary appointment or upon appointment by the probate court.[4] *See* A.R.S. § 14–5201. Because that meth-

---

**3.** A.R.S. § 8–201(11)(a) provides: " 'Dependent child' means a child who is adjudicated to be: (a) In need of proper and effective parental care and control and has no parent or guardian, or one who has no parent or guardian willing to exercise or capable of exercising such care and control."

**4.** We do not mean to imply that the maternal grandparents would be better served by petition-

ing for a guardianship in probate court under A.R.S. § 14–5204. Although the supreme court has noted the overlap and interrelationship of the probate court's powers under that provision and the dependency provisions of Title 8, it has also stated, "the juvenile court remains the forum for resolving questions of dependency and concomitant placement. When adjudicating the dependency of a child, the juvenile court's orders take precedence over the orders of any

od was not utilized in this case, the juvenile court did not err in refusing to give preclusive effect to the mother's delegation of parental authority in relation to the dependency proceeding.

### C. Effect of Lack of Dependency Determination in Custody Award

■ Appellants also argue that the juvenile court had no jurisdiction to enter a custody order without a determination that the child was dependent. We note that appellants did not challenge the juvenile court's jurisdiction at the time the custody orders were entered, and, in fact, stipulated to the joint custody provisions on both occasions. However, the parties may not create subject matter jurisdiction by their consent. *Webb v. Charles,* 125 Ariz. 558, 611 P.2d 562 (App.1980). Furthermore, a challenge to subject matter jurisdiction may be raised for the first time on appeal. *In re Appeal in Pima County Juv. Action No. J–46735,* 25 Ariz.App. 424, 544 P.2d 248 (1976). We thus consider the issue.

#### 1. Jurisdiction to Award Custody Under Title 8

■ In this case, the juvenile court's jurisdiction arose from the filing of a dependency petition. When a petition is before the court that alleges facts that would establish dependency, the court acquires jurisdiction to make temporary orders pending a dependency determination. *Id.* This includes the power to make temporary placement orders prior to a dependency hearing. *Bechtel,* 150 Ariz. at 75, 722 P.2d at 243. However, no permanent disposition regarding the child's custody can be made until the juvenile court has made a factual and legal determination of dependency. *Id.* at 74, 722 P.2d at 242. Absent such an adjudication of dependency, the court has no authority to order permanent placement of the child or to monitor the conditions of that placement. *In re Appeal in Pima*

County Juv. Dependency Action No. 98874, 161 Ariz. 231, 778 P.2d 266 (App. 1989). Although the juvenile court is statutorily authorized to retain jurisdiction over a child until the child reaches age 21 for purposes of implementing any orders made in a juvenile proceeding, *see* A.R.S. § 8–202(E), that retention of subject matter jurisdiction is limited to those children whom the court has adjudicated either dependent or delinquent. *McBeth v. Rose,* 111 Ariz. 399, 531 P.2d 156 (1975).

■ The paternal grandparents argue that a finding of dependency can be "assumed" based on the allegations in the petition. However, because the joint custody order clearly specified that it was to be construed as a "decree" under A.R.S. § 25–331, we do not believe any implicit adjudication of dependency can be "assumed." Rather, the joint custody order in this case purports to be a permanent custody disposition, but clearly lacks the requisite adjudication of dependency. Based on the above well-established principles, the order is legally erroneous at this point in the proceedings.

■ This does not mean, however, that the juvenile court is without subject matter jurisdiction to proceed in this matter. There is still pending before the court a dependency petition that has not been adjudicated. Under these circumstances, the entry of a permanent custody order was legally erroneous rather than jurisdictionally fatal. *See, e.g., In re Marriage of Hinkston,* 133 Ariz. 592, 595–96, 653 P.2d 49, 52–53 (App.1982) (lack of jurisdiction (power to act) is distinguishable from legal error (acting improperly)).

#### 2. Jurisdiction Under Title 25

■ The joint custody order also attempted to establish permanent custody under A.R.S. § 25–331 *et seq.* Under that statutory scheme, child custody may be

court save the court of appeals and supreme court. A.R.S. § 8–202(D). This includes matters of temporary custody preceding the actual

dependency determination." *Bechtel v. Rose,* 150 Ariz. 68, 75 n. 4, 722 P.2d 236, 243 n. 4 (1986).

awarded without a finding of dependency, but the requirements for maintaining an action differ significantly from those set forth in the Title 8 juvenile code. *See Marshall v. Superior Court,* 145 Ariz. 309, 311, 701 P.2d 567, 569 (1985). A juvenile court may determine issues under Title 25 that are properly before it if its jurisdiction has been properly invoked. *See, e.g., In re Appeal in Maricopa County Juv. Action No. JD-4974,* 163 Ariz. 60, 63–64, 785 P.2d 1248, 1251–52 (App.1990) (parties may request that juvenile court consolidate functions of domestic relations court with those of juvenile court; if court finds that child is not dependent, then may award custody to a parent pursuant to A.R.S. § 25–332).

Under A.R.S. § 25–331(B), a custody proceeding may be brought only by (1) "a parent," or (2) "a person other than a parent, ... *but only if [the child] is not in the physical custody of one of his parents.*" (Emphasis added.) In *Webb v. Charles,* we addressed a factual situation similar to the one here: the child's grandmother argued, in the context of a habeas corpus proceeding, that the court had jurisdiction under A.R.S. § 25–331(B)(2) to award the child to her instead of the father, with whom the child was not living. We said:

> "Physical custody" as used in the statute relates to the custodial rights involved in the care and control of the child. Physical custody in this sense does not equate to having actual, immediate control of the physical presence of the child, rather it is the legal right to control the child. [citation omitted] Here, the father had not relinquished his legal rights to his son, therefore the grandmother had no standing under A.R.S. Sec. 25–331(B)(2).

125 Ariz. at 561, 611 P.2d at 565. Because "physical" custody did not equate to "legal" custody, the superior court could not decide custody under A.R.S. § 25–331(B)(2), but was limited to deciding the habeas petition. *Id.*

We have also noted that our domestic relations provisions were adopted from the Uniform Marriage and Divorce Act (UMDA) and that A.R.S. § 25–331 was derived from UMDA § 401. *Marshall,* 145 Ariz. at 311, 701 P.2d at 569. The commentary to that section indicates that a nonparent cannot acquire custody from a parent who retains legal custody of the child:

> If a non-parent (a grandparent or an aunt or uncle, perhaps) wants to acquire custody, he must commence proceedings under the far more stringent standards for intervention provided in the typical Juvenile Court Act. In short, this subsection has been devised to protect the "parental rights" of custodial parents and to insure that intrusions upon those rights will occur only when the care the parent is providing the child falls short of the minimum standard imposed by the community at large—the standard incorporated in the neglect or delinquency definitions of the state's Juvenile Court Act.

*Id., quoting* UMDA § 401 comment, 9A U.L.A. 194–95 (1979). The *Marshall* court agreed that nonparents may intervene to express their opinion about who would be the better custodial parent of the child, but "[t]he right of the intervenor extends no further, however, since the court has no power to award custody to anyone but a parent under A.R.S. § 25–331(B)(1)." 145 Ariz. at 311 n. 2, 701 P.2d at 569 n. 2.

Similarly, in this case the mother, although relinquishing her physical custody rights to the maternal grandmother through the revocable power of attorney, did not relinquish her legal custody rights, and the child has not been adjudicated a dependent child. Under these circumstances, the juvenile court has no legal authority to award permanent custody of a child to a nonparent under A.R.S. § 25–331. The joint custody order is therefore defective under this theory as well.

## CONCLUSION

The mother's delegation of parental authority to the child's maternal grandmother did not create a guardianship that would

defeat the allegations of dependency in this case. The juvenile court erroneously entered a permanent custody order without making a determination of dependency under A.R.S. § 8–201(11)(a). The court erroneously awarded permanent custody to a nonparent under authority of A.R.S. § 25–331. We therefore vacate the joint custody order and remand this matter to the juvenile court for further proceedings on the pending dependency petition.[5]

Counsel for the paternal grandparents has requested attorney's fees in this appeal pursuant to A.R.S. § 25–324. However, because we have held that this matter did not involve any jurisdiction conferred by Title 25, an award of fees under that section is inappropriate. The joint custody order is reversed, and this matter is remanded for further proceedings consistent with this opinion.

GARBARINO, Acting P.J., and GRANT, J., concur.

---

5. At oral argument before this court, counsel for the paternal grandparents argued that if this court invalidated the joint custody order, the juvenile court would need to "start all over" with a full evidentiary hearing that would again take four days and involve eighteen witnesses. We disagree that this is necessarily so. The legal issue before the court on remand is whether the child is dependent; if such a finding can be made on the existing record, the court may provide for the child's permanent placement based on the existing evidence or may take additional evidence as needed, in the court's discretion. If the child is found not to be dependent, the petition should be dismissed, and no issue regarding custody will be before the court.