NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KATHRYN S., *Appellant*,

*v.*

DEPARTMENT OF CHILD SAFETY, A.S., *Appellees*.

No. 1 CA-JV 18-0412
FILED 4-25-2019

Appeal from the Superior Court in Maricopa County
No. JD530548
The Honorable Karen L. O'Connor, Judge

**AFFIRMED**

COUNSEL

Maricopa County Legal Defender's Office, Phoenix
By Jamie R. Heller
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Lauren J. Lowe
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

---

Presiding Judge Paul J. McMurdie delivered the decision of the Court, in which Judge Randall M. Howe and Judge Jennifer B. Campbell joined.

---

**M c M U R D I E**, Judge:

**¶1**        Kathryn S. ("Mother") appeals the juvenile court's order terminating her parental rights. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        Mother is the biological parent of Anatolii, born in October 2016. In December 2016, Mother was arrested and charged with first-degree murder of Michael A. ("Father"), Anatolii's biological father. Following Mother's arrest, the Department of Child Safety ("DCS") petitioned for dependency based on neglect, alleging Mother was unable to provide Anatolii with the necessities of food, clothing, shelter, medical care, and parental supervision due to her incarceration.

**¶3**        Before her arrest, Mother executed a consent of a parent to the guardianship of a minor child and a power of attorney delegating parental powers over Anatolii in favor of Rae V. ("Aunt"). On December 22, 2016, DCS took temporary custody of Anatolii and placed him in a foster home. The following day, DCS placed Anatolii with Father's parents ("Paternal Grandparents"), before Father's paternity was established. The placement led Aunt to move to intervene in the dependency.

**¶4**        Mother contested the petition. The court heard oral argument regarding Aunt's motion to intervene and denied the motion because the child was not parentless and a guardian *ad litem* was assigned. The court set a dependency hearing for April 2017 and ordered Mother to appear telephonically, but Mother failed to appear. The court continued the hearing until May. On May 18, 2017, the court held the contested dependency hearing at which Mother appeared telephonically, and the court adjudicated Anatolii dependent.

**¶5**        In the juvenile court's order finding Anatolii dependent, the court ordered Mother to participate in "parenting classes or other services available [to Mother] while she is incarcerated." Mother completed Bible correspondence courses and American Community Correction Institute

courses during her incarceration. DCS sent mother photographs of Anatolii and provided Paternal Grandparents letters that Mother wrote. DCS did not offer any independent services to Mother.

¶6            In July 2017, DCS moved to terminate Mother's parental rights to Anatolii based on neglect under Arizona Revised Statutes ("A.R.S.") section 8-533(B)(2). In May 2018, DCS amended its termination motion to include fifteen months' time in out-of-home care under A.R.S. § 8-533(B)(8)(c).

¶7            The court held a termination hearing in August 2018. The juvenile court found DCS proved by clear and convincing evidence grounds for termination based on neglect and out-of-home placement. The juvenile court also found DCS proved by a preponderance of the evidence that termination was in Anatolii's best interests. Mother timely appealed, and we have jurisdiction under A.R.S. § 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶8            The right to custody of one's child is fundamental but not absolute. *Michael J. v. ADES*, 196 Ariz. 246, 248, ¶¶ 11–12 (2000). To support termination of parental rights, DCS must prove one or more statutory ground for termination by clear and convincing evidence. A.R.S. § 8-537(B); *Kent K. v. Bobby M.*, 210 Ariz. 279, 283–84, ¶ 19 (2005). The juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *ADES v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004). We review the court's termination decision for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Mary Lou C. v. ADES*, 207 Ariz. 43, 47, ¶ 8 (App. 2004).

¶9            Mother argues her parental rights should not have been terminated because: (1) DCS failed to make diligent efforts to provide appropriate reunification services required by A.R.S. § 8-533(B)(8)(c); (2) DCS did not provide sufficient evidence to establish a substantial likelihood that she would not be capable of exercising proper and effective parental care and control in the near future pursuant to A.R.S. § 8-533(B)(8)(c); (3) DCS failed to establish by clear and convincing evidence the grounds for termination based on neglect pursuant to A.R.S. § 8-533(B)(2); and (4) terminating her parental rights was not in Anatolii's best interests.

## A. DCS is Not Required to Undertake Futile Efforts When Providing Appropriate Reunification Services Under A.R.S. § 8-533(B)(8)(c).

¶10 DCS is required to make diligent efforts to provide appropriate reunification services under A.R.S. § 8-533(B)(8)(c). In deciding whether DCS met its burden, the court was required to "consider the availability of reunification services to the parent." A.R.S. § 8-533(D); *Jordan C. v. ADES*, 223 Ariz. 86, 93, ¶ 17 (App. 2009). DCS is not required to provide the parent with every conceivable service, but DCS must provide a parent with the time and opportunity to participate in programs "designed to improve the parent's ability to care for the child." *Jordan C.*, 223 Ariz. at 94, ¶ 20. We have never required DCS to undertake measures that are "futile." *See, e.g.*, *id.* (A.R.S. § 8-533(B)(8)'s requirement that DCS provide diligent reunification services does not require DCS to undertake futile efforts); *Christina G. v. ADES*, 227 Ariz. 231, 237, ¶ 25 (App. 2011) (affirming termination even though DCS did not request a hearing to determine if services were futile); *Maricopa County Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994) (the department "fulfilled its statutory mandate" to make diligent efforts to provide reunification services, despite the parent's failure or refusal to participate in the programs or services offered).

¶11 The juvenile court noted DCS did not provide any reunification services for Mother but found reunification efforts would have been futile due to her incarceration. We agree. DCS caseworkers testified that DCS provided Mother with pictures of Anatolii and facilitated communication with the child by giving the placement letters Mother wrote "in hopes of engaging mother." A DCS caseworker further testified that given the "nature of mother's incarceration and charges" any attempts at reunification would be futile because they would not be made with the "hopes of a probable quick reunification." DCS could not do more because it could provide no services to ameliorate Mother's incarceration—the reason Anatolii is in out-of-home care. *See James H. v. ADES*, 210 Ariz. 1, 3, ¶ 9 (App. 2005) (incarceration causes damage to the parent-child relationship because of physical separation, and DCS does not have services to correct that reality). Therefore, the juvenile court did not abuse its discretion by finding DCS did not need to provide reunification services because they would be futile.

**B.** **Sufficient Evidence Supports the Court's Finding There Was a Substantial Likelihood Mother Would Not be Capable of Exercising Proper and Effective Parental Care and Control in the Near Future.**

**¶12**         DCS is also required to prove by clear and convincing evidence that there is a substantial likelihood the parent will not be capable of exercising proper and effective parental care and control in the near future. A.R.S. § 8-533(B)(8)(c).

**¶13**         Mother argues the juvenile court relied on "mere speculation" to find she would not be capable of exercising proper and effective parental care and control in the near future. We disagree. Mother's first-degree murder trial was set for May 2018 and subsequently rescheduled until after the termination hearing in November 2018. The juvenile court heard testimony that Mother's criminal trial could be continued again.[1] Further, even if Mother were to be released following her criminal trial, DCS reports stated she would need to be assessed to determine what services, support, and behavioral changes would be required to facilitate reunification. At the time of termination, substantial evidence showed that Mother would not be able to exercise effective parental care and control in the near future and the juvenile court did not err by finding DCS proved by clear and convincing evidence the ground for termination based on Anatolii's out-of-home placement.[2]

**C.** **The Court Did Not Abuse its Discretion by Determining that Termination Was in Anatolii's Best Interests.**

**¶14**         Under A.R.S. § 8-533(B), the juvenile court must also find by a preponderance of the evidence that termination is in the child's best interests. *Kent K.*, 210 Ariz. at 284, ¶ 22. In doing so, the court presumes that the interests of the parent and child have diverged if a statutory ground is

---

[1]         We note that as of April 1, 2019, Mother's charges were still pending in Pinal County. *See In re Sabino R.*, 198 Ariz. 424, 425, ¶¶ 4–5 (App. 2000) (appellate court may take judicial notice of superior court records).

[2]         If evidence supports termination on one of the statutory grounds upon which the juvenile court orders termination, we need not address claims pertaining to the other grounds. *Jesus M. v. ADES*, 203 Ariz. 278, 280, ¶ 3 (App. 2002). Accordingly, we do not address Mother's argument that DCS failed to prove the ground for termination based on neglect.

proven. *Alma S. v. DCS*, 245 Ariz. 146, 150, ¶ 12 (2018). The focus shifts to the child, and the court's primary concern is the child's stability and security. *Id.* The court must consider the totality of the circumstances at the time of termination when determining whether termination is in the child's best interests. *Dominque M.*, 240 Ariz. 96, 99, ¶ 12 (App. 2016).

**¶15**      Here, the juvenile court found termination would provide Anatolii with a permanent, safe, and stable home. The court explained that even if Mother was released, the unknown "time period it would take to determine whether reunification is viable . . . is not in the child's best interest." The court also found that Anatolii was out of Mother's care for most of his life, he deserved permanency, and even if the current placement were to be disrupted, the child was adoptable.

**¶16**      Mother argues the juvenile court relied on her incarceration and presumed her guilt as the basis of termination. We find nothing in the record to support such a conclusion. Mother also argues DCS and the court disregarded her power of attorney and consent for guardianship. Once a court has found the dependency, a power of attorney or consent for guardianship is only some evidence to be considered by the juvenile court as to the child's appropriate placement; it is not dispositive. *Maricopa County Juv. Action No. JD-05401*, 173 Ariz. 634, 639 (App. 1993). The juvenile court held oral argument on Aunt's motion to intervene based on the agreements and denied the motion. Nothing suggests the juvenile court disregarded the power of attorney. Reasonable evidence supports the court's findings, and the court did not err by finding termination was in Anatolii's best interests.

## CONCLUSION

**¶17**      For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights.



AMY M. WOOD • Clerk of the Court
FILED:  AA