998 P.2d 1091

Bruce D. TOBIAS and Martha E. Pease, husband and wife; and Robert G. Flynn and Carol J. Flynn, husband and wife, Plaintiffs–Appellants,

v.

Smelker Cree DAILEY and Dona L. Dailey, husband and wife, and Dona L. Dailey, as her sole and separate property; Oak Creek Cliffs Homeowners Association, Inc., an Arizona corporation; The Heirs or Devisees of Charles M. Richards, a widower, deceased; Donald F. Christy and Margaret M. Christy, husband and wife; Weststar Loan Servicing Corporation, an Arizona corporation, as Trustee, successors-in-interest, to CSC Financial Services, Inc., an Arizona corporation, as successor Trustee to Northern Arizona Title Co., an Arizona corporation, as Trustee; The Stockholders and their spouses, if married on the date of revocation or expiration of the charter of Doodlebug Water Co., an Arizona corporation; Karen McCall, aka Karen L. McCall, an unmarried woman; Emery Earl McCall, an unmarried man; Trustee or Debtor–in–Possession, U.S. Bankruptcy Court Case No. 9507801PCT–JMM (Debtor: Emery E. McCall); Karen Lynn McCall, an unmarried woman; Directors Mortgage Loan Corporation, a California corporation; Bank One Arizona, N.A., formerly Valley National Bank of Arizona, a national banking association, as Trustee of the Revocable Living Trust Agreement of Frank L. Fisher dated June 13, 1982; James F. Fisher, a married man, as his sole and separate property; Ann F. Patterson, a widow and Gretchen F. Delaney, a single woman, c/o Mrs. Nancy Shoemaker, Trust Administrator, Valley National Bank of Arizona; John Doe and Jane Doe, as Trustees of the Rawlins Family Trust dated October 5, 1987; Roderick King Rawlins, Jr. and Joan H. Rawlins, husband and wife, the Heirs or Devisees of Roderick K. Rawlins and Sara S. Rawlins, husband and wife, de-

ceased; Bank One Arizona, N.A., formerly Valley National Bank of Arizona, a national banking association; The Heirs or Devisees of any deceased Defendant; The County of Coconino, a body politic, Defendants–Appellees.

No. 1CA–CV 98–0684.

Court of Appeals of Arizona, Division 1, Department B.

April 4, 2000.

Sacks Tierney, P.A., Phoenix, by David C. Tierney, Isabel M. Humphrey and Tony S. Cullum, Flagstaff, Attorneys for Appellants.

Teilborg, Sanders & Parks, P.C., by John C. Gemmill, David E. Koval, Phoenix, Attorneys for Appellees.

## OPINION

FIDEL, Judge.

¶ 1 Arizona's private condemnation statute permits a private landowner to condemn and take lands of another when the land "is so situated with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity." A.R.S. § 12–

1202(A).[1] A landowner seeking to condemn a private way of necessity over the lands of another must show a "reasonable necessity" for the taking. *Solana Land Co. v. Murphey,* 69 Ariz. 117, 125, 210 P.2d 593, 598 (1949).

¶ 2  In this appeal from judgment denying Plaintiffs a private way of necessity, we consider:

(1) whether the trial court erred in concluding that Plaintiffs failed to carry their burden of proving "reasonable necessity;"

(2) whether use of an implied easement is limited to uses existing at the time of the grant; and

(3) whether the trial court erred in denying Plaintiffs' motion for leave to amend their complaint to add a claim for "wrongful and bad faith denial of a private right of way by necessity."

### HISTORY

¶ 3  Plaintiffs own 27 acres of land in Yavapai County, Arizona. Their land, known in this litigation as the "27-acre parcel," was part of a larger tract of United States Forest Service land until 1968, when the federal government conveyed it to the C.O. Bar Livestock Company. Shortly thereafter, C.O. Bar conveyed the parcel to Babbitt Brothers Trading Company. Plaintiffs purchased the parcel from Babbitt Brothers in 1993.

¶ 4  Forest Service land borders Plaintiffs' property to the north and west, and Oak Creek borders it to the south; lands to Plaintiffs' east are privately held. A private roadway runs from State Highway 89A to the homes of Defendants, all private landowners to Plaintiffs' east. Plaintiffs, asserting that they lack adequate access to their property, seek to condemn a private way of necessity over the Defendants' roadway pursuant to A.R.S. § 12–1202(A). Defendants maintain, however, that Plaintiffs are entitled to an implied way of necessity over the Forest Service lands and therefore lack the reason-

able necessity to undertake the private condemnation that they seek.

¶ 5  Before proceeding to a bench trial, the parties stipulated in a joint pretrial statement that "Plaintiffs have no current, legal access route to their parcel, unless Defendants are correct that Plaintiffs have an implied right of access owed by the Forest Service." In that same document, the parties deemed material the following contested issues of fact and law:

6. Whether Plaintiffs are entitled to obtain access by means [of] an implied way of necessity from the original grantor of their property, the United States of America (and/or United States Forest Service).

7. Whether the United States Forest Service, assuming it is obligated to provide access to Plaintiffs' land, would be obligated to provide reasonable automobile access sufficient to serve the purposes for which Plaintiffs' property is currently zoned and/or reasonably expected to be used.

¶ 6  At the close of Plaintiffs' evidence, the trial court granted Defendants' motion for judgment as a matter of law pursuant to Rule 52(c), Arizona Rules of Civil Procedure, concluding that Plaintiffs had failed to carry their burden of proving reasonable necessity.

¶ 7  In this timely appeal from the trial court's findings of fact, conclusions of law, and judgment, we deferentially review the trial court's findings of fact but independently review its conclusions of law. *See* Ariz. R. Ci v. P. 52(a); *Polk v. Koerner,* 111 Ariz. 493, 494–95, 533 P.2d 660, 661–62 (1975).

### THE BURDEN OF DISPROVING AN IMPLIED WAY OF NECESSITY

¶ 8  To prove reasonable necessity for the condemnation of a private way of necessity, landowners seeking condemnation have the burden of proving that they lack an adequate alternative outlet. The central question in this case is whether Plaintiffs have an alternative outlet by common law implication. It is Plaintiffs' burden to prove

---

1. The statute implements article 2, § 17 of the Arizona Constitution, which includes "private ways of necessity" among several listed excep-

tions to the general proposition that "[p]rivate property shall not be taken for private use."

that they do not. *See Bickel v. Hansen*, 169 Ariz. 371, 375, 819 P.2d 957, 961 (App.1991).

¶ 9   The rule of common law implication was summarized in *Bickel:* "Under the common law, where land is sold that has no outlet, the vendor by implication of the law grants ingress and egress over the parcel to which he retains ownership, enabling the purchaser to have access to his property." *Id.* at 374, 819 P.2d at 960.   In contrast to an outlet achieved by private condemnation pursuant to A.R.S. § 12–1202(A), which is known as a *"private* way of necessity," an outlet imposed by common law implication is known as an *"implied* way of necessity."   An implied way of necessity is appurtenant to the land; thus if the 27–acre parcel acquired an implied way of necessity over the adjoining federal lands at the time of its creation,[2] the Plaintiffs, as current owners of the parcel, would enjoy that implied way of necessity today.   *Id.* at 375, 819 P.2d at 961.

¶ 10   The trial court concluded that Plaintiffs failed to prove that they lack an implied way of necessity across the lands of the federal government, as original grantor of the 27–acre parcel.   Plaintiffs assert that the trial court was mistaken.   According to Plaintiffs, the 27–acre parcel *had* adequate and legal access at the time of its creation and accordingly did not acquire an implied way of necessity over federal land.

¶ 11   Plaintiffs' argument stems from a residential parcel owned by John and Elizabeth Babbitt located adjacent to the 27–acre parcel.   John and Elizabeth Babbitt owned their residential parcel in 1968 when the Forest Service conveyed the 27–acre parcel to C.O. Bar Livestock Company and continued to own it in 1993 when Plaintiffs bought the 27–acre parcel from Babbitt Brothers Trading Company, C.O. Bar Livestock's successor.   During the period of their ownership, John and Elizabeth Babbitt had the legal right to enter their own parcel by driving over the private roadway on Defendants' land that Plaintiffs seek to condemn.   From the access to Defendants' roadway that John and Elizabeth Babbitt enjoyed, Plaintiffs attempt to construct an argument that C.O. Bar Livestock and Babbitt Brothers Trading Company—Babbitt family enterprises—enjoyed similar access to Defendants' roadway as a means of ingress and egress for the 27–acre parcel.   Asserting that the 27–acre parcel's owners enjoyed such right of access at the time they obtained the parcel from the federal government, Plaintiffs conclude that the parcel did not qualify for an implied way of necessity over federal land.

¶ 12   The deficiency in this construct is one of proof.   Lumping John and Elizabeth Babbitt together with the Babbitt enterprises that owned the 27–acre parcel, Plaintiffs assume that both the Babbitts individually and the Babbitt enterprises had the legal right to use Defendants' roadway; they further assume that the right of access extended beyond the home of John and Elizabeth Babbitt to the 27–acre parcel as well.   Plaintiffs, however, did not prove this contention to be fact.

¶ 13   By contrast, it was undisputed that the 27–acre parcel was, until its conveyance to C.O. Bar, part of a larger tract of land owned by the federal government.   Former unity of title and subsequent separation are factual predicates to implying a way of necessity.   *See Roberts v. Smith,* 41 Wash. App. 861, 707 P.2d 143, 145 (1985).   If the separated portion is landlocked, then the law implies intent on the part of the grantor to create an easement over the retained land. *See id.* at 146.   Conceding unity of title and subsequent separation, and failing to prove legal access at the time of conveyance other than over the land of the original grantor, Plaintiffs failed to adequately rebut the inference that they were entitled to an implied way of necessity over neighboring Forest Service lands.

## Scope of Implied Way of Necessity

[6, 7]   ¶ 14   The mere fact that an alternate route is available to them does not, as a

---

2.   The parties have assumed, without briefing the question, that an implied way of necessity may arise against the federal government.   Our research suggests that this is so.   *See Kinscherff v. United States,* 586 F.2d 159, 161 (10th Cir.1978)

(an implied easement of necessity is a real property interest that may be adjudicated in a quiet title action against the United States pursuant to 28 U.S.C. § 2409a).

matter of law, preclude Plaintiffs from condemning a way over Defendants' land. Plaintiffs can establish necessity under the private condemnation statute by demonstrating that the alternate route is unreasonable or inadequate. *See Siemsen v. Davis*, 1 CA–CV 98–0651, ¶ 23, 2000 WL 343150 (Ariz.App. April 4, 2000). Plaintiffs seek to demonstrate that an implied way of necessity over federal land would be inadequate because it would be limited to horseback access to work cattle on the land. Such limited access, they contend, would be inadequate for the residential development that Plaintiffs intend.

¶ 15 At the time of the conveyance and for some time thereafter, the 27–acre parcel was indeed used only for the occasional grazing of 20 to 30 cows. Passage to and from the land was primarily on horseback. The law, however, does not support Plaintiffs' argument that an implied way of necessity would be limited by these facts. The necessity implied at common law is sufficient in scope to permit reasonable use and enjoyment of the land. *See* RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 2.15 cmt. d (Tentative Draft No. 1, 1989). Access by motor vehicle was, even prior to 1968, recognized as reasonably necessary to the enjoyment of land. *See Solana*, 69 Ariz. at 121, 210 P.2d at 595. Nor would the common law limit Plaintiffs to utilizing the land for grazing cattle. According to the Restatement, the scope of an implied easement is measured "by such uses as the parties might reasonably have expected from future uses of the dominant tenement." RESTATEMENT OF PROPERTY § 484 cmt. b (1944). In determining whether a particular use is one that the parties to the original conveyance "might reasonably have expected," the law presumes that the parties "contemplated a normal development" of the property. RESTATEMENT OF PROPERTY § 484. Any restrictions inherent in the scope of an implied easement serve to properly limit the future uses of the dominant parcel to those that are "reasonable" and "normal". *See* RESTATEMENT OF PROPERTY § 484 cmt. b, illus. 4 (scope of implied easement does not extend to "abnormal" development). They do not create the necessity of condemning an alternate route.

¶ 16 Here, we need not consider whether the residential use Plaintiffs propose is "normal" development; nor need we speculate whether the parties to the original conveyance contemplated residential development of the property. A 1967 tract valuation report prepared by the federal government specifically recognizes that one potential use of the property was for residential development. Thus, the evidence plainly establishes the fact. Accordingly, neither the facts nor the law support Plaintiffs' assertion that an implied way of access would be limited to access associated with cattle grazing and therefore inadequate for reasonable use.

¶ 17 For the foregoing reasons, we affirm the trial court's conclusion that Plaintiffs failed to carry their burden of proving reasonable necessity under the private condemnation statute.[3]

## BAD FAITH DENIAL OF PRIVATE WAY OF NECESSITY

¶ 18 We last address Plaintiffs' argument that the trial court erroneously denied them leave to amend their complaint to add a cause of action for "wrongful and bad

---

3. Plaintiffs suggest that the trial court's judgment has placed them in a no-win situation because it found that they had not carried their burden of proving their right to a statutory private way of necessity across Defendants' properties, yet struck Defendants' proposed conclusion number six, which read as follows:

Plaintiffs, as successors-in-interest of the original grantee, C.O. Bar Livestock Company, stand in the shoes of C.O. Bar Livestock Company and are entitled to an implied way of necessity from the federal government.

The trial court properly rejected this conclusion. The issue was not, nor could it have been, fully determined in the absence of the federal govern-

ment, which Plaintiffs did not undertake to make a party to the action. Plaintiff failed in their action against Defendants to prove that they *lack* an implied way of necessity across federal land, and did not seek to prove in an action that included the federal government that they *have* an implied way of necessity across federal land. In effect, because Plaintiffs have an unresolved but colorable claim to access and egress by the federal route, they have not proved that they are landlocked and did not meet their burden under A.R.S. § 12–1202(A) to prove reasonable necessity for condemning their chosen route across Defendants' land.

faith denial of a private right of way by necessity." Plaintiffs allege that by refusing to accede to a private way of necessity to which they were entitled as a matter of law, Defendants wrongfully subjected them to lost real estate revenues and litigation costs. Plaintiffs concede that no state has yet recognized this cause of action, but urge us to adopt it based on a duty of good faith and fair dealing that arises from the parties' special relationship as neighboring landowners.

¶ 19 The trial court denied leave to amend, finding no basis in the law for the cause of action Plaintiffs sought to add to their complaint. Nor do we. Although Plaintiffs cite general authority that demonstrates the limited application of the tort of bad faith to certain special relationships in Arizona law, they cite no precedent for extending tort law into the field of property rights and obliging one landowner, as a matter of good faith and fair dealing, to voluntarily relinquish property rights when confronted with a neighboring landowner's demand for a private way of necessity.[4]

¶ 20 Even, however, if we were to entertain the viability of such a claim, it would clearly have no validity in this proceeding.

We have affirmed the trial court's judgment in favor of Defendants on Plaintiffs' private condemnation claim; it follows that Defendants' resistance was not wrongful.

### CONCLUSION

¶ 21 Because Plaintiffs failed to establish that they lack reasonable alternative access to their property, the trial court properly granted Defendants' motion for judgment as a matter of law. The trial court also properly denied Plaintiffs leave to amend their complaint to add a cause of action for wrongful and bad faith denial of a private way of necessity. For the foregoing reasons, the judgment of the trial court is affirmed.

CONCURRING: CECIL B. PATTERSON, Jr., Presiding Judge, and JAMES B. SULT, Judge.

---

4. Pursuant to A.R.S. § 12–1202(A), one who seeks to condemn a private way of necessity may seek a legal declaration of the validity of his claim, but nothing in the statute suggests that the prospective condemnee may not defend against the claim. Indeed, the statute does not charge the losers of such lawsuits with their adversaries' attorneys' fees.