NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MARIA J., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, R.R., *Appellees.*

No. 1 CA-JV 14-0300
FILED 4-14-2015

Appeal from the Superior Court in Yuma County
No. S1400JD20140281
The Honorable Kathryn Stocking-Tate, Judge

**AFFIRMED**

COUNSEL

The Law Offices of Kelly A. Smith, Yuma
By Kelly A. Smith
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Erika Z. Alfred
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Kent E. Cattani and Judge Peter B. Swann joined.

---

**W I N T H R O P**, Judge:

¶1         Maria J. ("Mother") appeals the juvenile court's order adjudicating her child, R.R., dependent as to her.[1]  For the reasons stated below, we affirm.

**FACTS AND PROCEDURAL HISTORY[2]**

¶2         Mother, a Guatemalan national, is an undocumented immigrant living in southern California.  In December 1997, while living in Oregon, Mother gave birth to R.R.  In 1998, Mother and R.R. moved to Guatemala, where Mother gave birth to another child, V.J., in December 1999.[3]

¶3         In 2003, Mother returned to the United States, leaving the children in the care of their maternal grandparents in Guatemala.  Over the next eleven years, Mother did not visit the children or bring them to visit her in the United States, although she sent them some money.  Meanwhile,

---

[1]     The juvenile court also adjudicated R.R. dependent as to her biological father, Remigio R. ("Father"), who has not been located and is believed to be deceased.  Father is not a party to this appeal.

[2]     In reviewing an adjudication of dependency, we view the evidence in the light most favorable to sustaining the juvenile court's findings. *Willie G. v. Ariz. Dep't of Econ. Sec.*, 211 Ariz. 231, 235, ¶ 21, 119 P.3d 1034, 1038 (App. 2005).

[3]     We refer to R.R. and V.J. collectively as "the children."

when R.R. was ten years old, she dropped out of school and began cleaning homes to support V.J., her grandparents, and herself.[4]

**¶4**        The children's grandmother died in December 2013, and their grandfather died a few weeks later, in January 2014. The children began living with an uncle, but were unable to continue doing so.

**¶5**        In June 2014, the children boarded a bus in Guatemala and began a four-to-five day journey to the United States border.[5] Along the way, they were assaulted by Mexican law enforcement officers, who took most of their money. When the children reached the port of entry in San Luis, Arizona, they were detained by federal authorities. No adult met the children at the border, and R.R., who possessed only twenty dollars and the clothes on her back, had no way to get to Mother's apartment in California.

**¶6**        The Arizona Department of Child Safety ("DCS") took R.R. into temporary custody.[6] A DCS investigator called Mother to come and get R.R., but Mother refused, ostensibly because she did not want to risk

---

[4]        At the dependency hearing, Mother testified that, while the children were living in Guatemala, she sent them "400 or $500 per month," and R.R. "never worked." The juvenile court, however, found Mother's testimony was not credible. *See Hamilton v. Municipal Court*, 163 Ariz. 374, 377, 788 P.2d 107, 110 (App. 1989) ("The trial court is not bound to accept as true the uncontroverted testimony of an interested party." (citation omitted)).

[5]        Mother testified she "made arrangements" for the children to travel from Guatemala to the United States, but had not sent money for the journey because the children already had "the money that I usually sent to them." She further testified the children traveled with a twenty-year-old sibling, who was taken into custody at the United States border by federal officials because "she doesn't have papers." No other evidence supported Mother's claim, and as previously noted, the juvenile court found she was not credible.

[6]        Because V.J. is not a United States citizen, federal officials took him into custody and later released him. According to Mother, V.J. is currently in her custody. Even if true, however, we do not consider this information dispositive. Mother has provided no evidence or argument that the federal government is in any way subject to or regularly follows the Interstate Compact on the Placement of Children ("ICPC"), much less that it did so in V.J.'s case.

the possibility of being apprehended at a Border Patrol checkpoint while traveling to Yuma, Arizona. Mother suggested her "significant other" might be able to pick up R.R., but DCS determined that would not be appropriate because he had a criminal history and had never met R.R. Mother refused to provide further contact information.

¶7 On June 18, 2014, DCS filed a petition alleging R.R. was dependent because Mother had neglected and abandoned her. In part, DCS maintained Mother was unable or unwilling to provide R.R. with the basic necessities of life, including medical care, proper supervision, and education; had left R.R. with relatives in Guatemala, where she did not attend school or receive medical care; had failed to pick up R.R. after she travelled through Mexico to the United States; and had refused to allow for inspection of Mother's residence to ensure R.R.'s safety.

¶8 A guardian ad litem was appointed for R.R., and counsel was appointed for Mother. On June 20, 2014, the juvenile court held a preliminary protective hearing, and an initial dependency hearing was held on July 7, 2014.

¶9 Sometime after DCS filed the dependency petition, Mother provided the DCS investigator with contact information for a maternal aunt ("Aunt") who might be able to pick up R.R. and transport her to California. Aunt, however, was unable to drive and stated she would have to rely on her husband ("Uncle") to get R.R. Uncle, however, had a criminal history, including charges of domestic violence. Mother eventually gave Aunt a power of attorney authorizing her to take custody of R.R., ostensibly for the purpose of transporting R.R. to Mother, but because Aunt and Uncle were not Arizona residents, DCS officials concluded DCS was required under the ICPC to assess them in terms of placement before placing R.R. in their custody.[7] However, DCS was unable to gather the necessary information to conduct an ICPC investigation for Aunt and Uncle.

¶10 While awaiting the dependency hearing, DCS placed R.R. with a foster family, who ensured she was attending school. R.R. was also given medical attention, receiving her first immunization shots.

---

[7] *See generally* Ariz. Rev. Stat. ("A.R.S.") § 8-548; *see also Ariz. Dep't of Econ. Sec. v. Leonardo*, 200 Ariz. 74, 77-78, ¶¶ 8-9, 22 P.3d 513, 516-17 (App. 2001) (discussing Arizona's adoption of the ICPC, and its purpose and policy in facilitating cooperation between states in the protection, placement, and monitoring of dependent children).

Additionally, a visit to the dentist disclosed she had fifteen cavities, all of which ultimately required fillings.

¶11 DCS sent a referral for parenting classes and counseling to Mother in California, and started an ICPC process for Mother. DCS also offered Mother supervised visits and telephone contact with R.R., and Mother participated in telephonic visits with her approximately two or three times per week. However, Mother continued to refuse to come to Arizona to visit or get R.R. Further, DCS was unable to verify Mother's claim that she was living in a one-bedroom apartment with V.J., or otherwise assess the current living situation, and was unable to verify Mother's claim that she was currently employed or whether Mother had the financial means to care for R.R.

¶12 On September 3, 2014, the juvenile court held a contested dependency hearing. DCS presented testimony from the DCS investigator and the DCS caseworker assigned to the case. At the close of the State's case, Mother moved for judgment as a matter of law as to both alleged grounds for dependency. The juvenile court denied Mother's motion on the neglect ground, but granted the motion on the abandonment ground.

¶13 Mother, who was appearing telephonically and spoke through an interpreter, then testified she lives in an apartment with V.J., who was placed with her by the federal government.[8] She claimed she is employed by a small company during the week, cleans houses on weekends, has a weekly income of $580, and has the financial means to care for the children, including providing medical care, which she believes could be obtained through Medicaid. Mother further testified that V.J. is attending school, and she has looked into placing R.R. in a school. She stated she could not provide proof of her income, however, because she receives most of her income in the form of cash, and only a small amount through checks. She also stated she would not run the risk of coming to pick up R.R. due to her "legal status," but Aunt and Uncle had come to Yuma and were present the day of the hearing.

¶14 At the conclusion of the hearing, the juvenile court adjudicated R.R. dependent after concluding DCS had proved by a

---

[8] Mother testified the apartment is leased by her "brother-in-law," and although she is also listed as a tenant on the lease, V.J. is not. (Although the record is not clear, it appears the "brother-in-law" is Mother's boyfriend's brother.) She also testified the lease contains no condition limiting the number of people living in the apartment.

preponderance of the evidence that Mother was unable to parent R.R. and Mother's inability to parent caused an unreasonable risk of harm to R.R. In part, the court found Mother's testimony was not credible, no parent willing and able to care for R.R. was physically present, Mother had failed to show proof of her housing arrangements or income, and Mother had neglected R.R. by failing to make appropriate plans for her care after her grandparents had died and allowing R.R. to assume the risk of traveling from Guatemala to the United States on a bus unsupervised, while Mother refused to even risk traveling to the border to get her. A case plan of family reunification was set, with a current target date of June 14, 2015.[9]

¶15    We have jurisdiction over Mother's timely appeal pursuant to A.R.S. § 8–235(A).

## ANALYSIS

¶16    Mother argues the juvenile court erred in denying her motion for judgment as a matter of law as to the allegation of neglect and abused its discretion in finding R.R. dependent as to her.[10]  In effect, Mother's

---

[9]    DCS is currently offering the following services as part of its permanency plan:  allowances and subsidies, case management services, medical and dental services, parent locate services, placement services, visitation services, and young adult services.  The juvenile court has held periodic report and review hearings, and has found that DCS has made reasonable efforts to identify and assess placement with a member of the child's extended family or persons with a significant relationship with the child, but no family members or persons with a significant relationship have yet been identified as an appropriate placement.

[10]    DCS argues that, by failing to provide the standard of review or applicable case law, Mother has waived her argument regarding the denial of her motion for judgment as a matter of law.  *See* ARCAP 13(a)(6) (requiring that, for each contention, "the proper standard of review on appeal shall be identified, with citations to relevant authority"); *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 195, ¶ 88, 181 P.3d 219, 242 (App. 2008) (concluding that a party's failure to adequately develop its argument resulted in waiver).  In light of the significant interests in dispute, however, we address the merits of Mother's argument.

argument is that substantial and reasonable evidence does not support the court's finding of dependency.

**¶17** We review *de novo* the denial of a motion for judgment as a matter of law. *Warne Invs., Ltd. v. Higgins*, 219 Ariz. 186, 194, ¶ 33, 195 P.3d 645, 653 (App. 2008); *Tobias v. Dailey*, 196 Ariz. 418, 420, ¶¶ 6-7, 998 P.2d 1091, 1093 (App. 2000). In our analysis, however, we view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Warne Invs.*, 219 Ariz. at 194, ¶ 33, 195 P.3d at 653; *Tobias*, 196 Ariz. at 420, ¶ 7, 998 P.2d at 1093; *Monaco v. HealthPartners of S. Ariz.*, 196 Ariz. 299, 302, ¶ 6, 995 P.2d 735, 738 (App. 1999). A trial court should only grant a motion for judgment as a matter of law "if the facts produced in support of the claim or defense have so little probative value, given the quantum of evidence required, that reasonable people could not agree with the conclusion advanced by the proponent of the claim or defense." *Orme Sch. v. Reeves*, 166 Ariz. 301, 309, 802 P.2d 1000, 1008 (1990). We will affirm if substantial evidence exists that could lead reasonable persons to find the ultimate facts to support the verdict.[11] *Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25, 28, ¶ 6, 270 P.3d 852, 855 (App. 2011) (citations omitted); *Acuna v. Kroack*, 212 Ariz. 104, 111, ¶ 24, 128 P.3d 221, 228 (App. 2006).

**¶18** Additionally, we review a juvenile court's ultimate ruling in a contested dependency hearing for an abuse of discretion. *See Willie G.*, 211 Ariz. at 235, ¶ 21, 119 P.3d at 1038. We will not disturb a dependency adjudication unless the findings on which it is based are clearly erroneous; that is, unless no reasonable evidence supports them. *See id.*; *Pima Cnty. Juv. Dependency Action No. 118537*, 185 Ariz. 77, 79, 912 P.2d 1306, 1308 (App. 1994).

---

[11] Judgment as a matter of law during a trial without a jury is permitted if "a party has been fully heard on an issue and the court after determining the facts finds against the party on that issue." Ariz. R. Civ. P. 52(c); *see also* *S.S. v. Superior Court*, 178 Ariz. 423, 424, 874 P.2d 980, 981 (App. 1994) (recognizing that this court may resort to the civil rules "where the juvenile rules are silent and where the civil rules are readily adaptable and necessary to the dependency proceedings"). If no findings of fact are requested or made, this court must presume the trial court found the necessary facts upon which to predicate its judgment, provided evidence exists in the record to support the presumption. *Upton v. East-West Realty Co.*, 81 Ariz. 58, 60, 299 P.2d 646, 647 (1956); *see also* Ariz. R. Civ. P. 52(a), (c) (explaining findings of fact and conclusions of law are only necessary if requested).

**¶19** The juvenile court, as the trier of fact in a dependency proceeding, is "in the best position to weigh the evidence, judge the credibility of the parties, observe the parties, and make appropriate factual findings." *Pima Cnty. Dependency Action No. 93511*, 154 Ariz. 543, 546, 744 P.2d 455, 458 (App. 1987). Thus, the resolution of conflicting evidence is within the unique province of the juvenile court, and we will not reweigh the evidence. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47, ¶ 8, 83 P.3d 43, 47 (App. 2004); *Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12, 53 P.3d 203, 207 (App. 2002).

**¶20** Under A.R.S. § 8-201(14)(a)(i), a dependent child is one who is "[i]n need of proper and effective parental care and control and . . . who has no parent or guardian willing to exercise or capable of exercising such care and control." A child may also be dependent if the child's "home is unfit by reason of abuse, neglect,[12] cruelty or depravity by a parent, a guardian or any other person having custody or care of the child." A.R.S. § 8-201(14)(a)(iii). However, the focus of the dependency statutes is "not on the conduct of the parents but rather the status of the child." *Santa Cruz Cnty. Juv. Dependency Action Nos. JD-89-006 & JD-89-007*, 167 Ariz. 98, 102, 804 P.2d 827, 831 (App. 1990).

**¶21** To an extent, Mother's arguments ask us to reweigh the evidence, which, as we have recognized, we will not do. *See Mary Lou C.*, 207 Ariz. at 47, ¶ 8, 83 P.3d at 47. Moreover, although Mother asserts the juvenile court erroneously shifted the burden of proof to her on the issues of her employment and housing, and otherwise characterizes several of the court's findings as mere speculation, we conclude the underlying findings necessary for the court's adjudication of dependency are supported by substantial, reasonable evidence, independent of any employment and housing issues.

**¶22** In this case, Mother's actions throughout have exhibited ongoing neglect supporting the conclusion that R.R. is dependent as to her. From the time Mother left R.R. in 2003, Mother never visited her, and

---

12  Under A.R.S. § 8-201(24)(a), "neglect" is defined in pertinent part as:

The inability or unwillingness of a parent, guardian or custodian of a child to provide that child with supervision, food, clothing, shelter or medical care if that inability or unwillingness causes unreasonable risk of harm to the child's health or welfare . . . .

although Mother asserts she sent money for the children, it was clearly insufficient because R.R. had to drop out of school at a very young age and work to support her family, and she never received any medical or dental care. After R.R.'s grandparents died, Mother made no appropriate plans to get the children or bring them to live with her. Instead, five months later, Mother's only "arrangements" consisted of a long, dangerous, and unsupervised bus trip through a foreign country with no additional funds made available to the children.[13] Further, when the children reached the border, no adult met them, and with only twenty dollars, R.R. had no way to get to Mother's home in California. Only after R.R. was in DCS's protective custody did Mother suggest her "significant other" — who had a criminal history and had never met R.R. — could pick up R.R., and only after the dependency petition was filed did Mother suggest Aunt and Uncle could pick her up. DCS was unable to assess them in terms of placement, however, and Uncle had a criminal history. Many of these events are recent, and no evidence was presented that Mother's ongoing inability or unwillingness to exercise proper judgment or provide proper parental supervision has changed. Accordingly, substantial, reasonable evidence supports the juvenile court's conclusions that Mother "put the children in unreasonable risk of harm" and neglected the children because "she should have been making plans [when the grandparents died] to either go back to Guatemala and parent her children or . . . get the children up to the U.S," and because she allowed the children to assume the risk of traveling through Mexico by themselves.

¶23        Moreover, after taking R.R. into temporary protective custody, DCS gave Mother an opportunity to come get her, but Mother refused to do so, and later testified she was unwilling to risk crossing the California border because she was undocumented. By the time of the dependency hearing, Mother still had not come to Arizona to see or get R.R., and she continued to refuse to do so. Substantial, reasonable evidence therefore supported the juvenile court's determination that R.R. was dependent because there was no parent "able or willing to take custody of [her]" at the time of trial.[14]

---

[13]        Even Mother admitted the children could have come into harm traveling unsupervised through Mexico, and in fact, they were assaulted and robbed.

[14]        Mother asserts she was willing and able to parent R.R. because she "sent someone with a legal valid power of attorney to pick her child up."

¶24      Because substantial, reasonable evidence otherwise supports the juvenile court's finding of dependency, we need not consider Mother's assertion that the juvenile court shifted the burden of proof on the issues of her employment and housing. *See Oscar F. v. Dep't of Child Safety*, 235 Ariz. 266, 269 n.5, ¶ 11, 330 P.3d 1023, 1026 n.5 (App. 2014) (holding that this court need not consider one reason for a dependency if sufficient evidence supports another). In any case, it appears the juvenile court was merely unpersuaded by the evidence Mother presented to counter DCS's evidence that R.R. was dependent. Moreover, the uncertainty of Mother's (and Aunt's) living situation was relevant to the need for an ICPC home study for a child who was otherwise dependent.

¶25      As we have noted, Mother maintains the juvenile court should have allowed Aunt to transport R.R. to her based on the power of attorney Mother signed allowing Aunt to take custody of R.R. But given R.R.'s status as a child in the temporary protective custody of DCS, the ICPC prohibited the juvenile court from simply placing her with Aunt or enabling Aunt to take her to Mother in California. *See* A.R.S. § 8-548, art. III(a)-(b), (d); *Ariz. Dep't of Econ. Sec. v. Stanford*, 234 Ariz. 477, 480-81, ¶¶ 17-18, 323 P.3d 760, 763-64 (App. 2014). When a parent's rights have been diminished by a court order — as compared to a parent who has full legal rights prior to placing a child — "no inference of fitness for placement may be made." *Leonardo*, 200 Ariz. at 81, ¶ 20, 22 P.3d at 520 (concluding that the ICPC applies to the out-of-state placement of children made temporary wards of the juvenile court). Instead, the parent "must be investigated to ensure that the child would be safe if placed with that parent and, thereafter, provided any necessary services." *Id.* When a parent lives in another state, the ICPC requires the other state to "investigate and monitor the placement." *Id.* This is because "the primary purpose of the ICPC is to protect children by making certain they are placed in a safe environment." *Id.* at 82, ¶ 22, 22 P.3d at 521.

¶26      Further, the ICPC prohibits the juvenile court from sending a child into a receiving state without complying with the ICPC's requirements or regulations. *See Stanford*, 234 Ariz. at 480-82, ¶¶ 17-23, 323 P.3d at 763-65; A.R.S. § 8-548. A violation of the ICPC not only endangers

---

However, when a parent executes a power of attorney, "the juvenile court d[oes] not err in refusing to give preclusive effect to the mother's delegation of parental authority in relation to the dependency proceeding." *Maricopa Cnty. Juv. Action No. JD-05401*, 173 Ariz. 634, 639-40, 845 P.2d 1129, 1134-35 (App. 1993). The juvenile court therefore did not err in finding the power of attorney alone was insufficient.

a child sent into another state without supervision, but also jeopardizes Arizona's future ability to place children in the other state. *See* A.R.S. § 8-548, art. IV (providing that any "violation of the laws respecting placement of children . . . shall constitute full and sufficient grounds for the suspension or revocation of any license, permit, or other legal authorization held by the sending agency which empowers or allows it to place, or care for children").

¶27 Neither Aunt nor Mother lives in Arizona. Mother provided mostly non-verifiable information at the dependency hearing, and continued to insist R.R. be released into Aunt's care. As the DCS case manager testified, however, to place R.R. with Aunt or allow her to take custody of R.R., Aunt and Uncle would have had to comply with the requirements of the ICPC to ensure R.R. was in a safe environment. DCS was unable to gather the necessary information to conduct an ICPC investigation for Aunt and Uncle, however, and even without an investigation done through the ICPC, DCS discovered Aunt was unable to drive, Aunt relied on Uncle for transportation, and Uncle had a criminal conviction for domestic violence. Releasing a child into such a situation would thus be inappropriate under the ICPC. Further, sending R.R. to Mother in another state by any means would have violated the ICPC unless the juvenile court determined R.R. was not dependent. The ICPC prohibited the juvenile court from placing R.R. with Aunt or enabling Aunt to take her to Mother in California. Accordingly, substantial evidence supports the juvenile court's denial of Mother's motion for judgment as a matter of law, and reasonable evidence supports the court's order finding R.R. dependent under A.R.S. § 8-201(14).

## CONCLUSION

¶28 Because substantial, reasonable evidence supports the juvenile court's order of dependency, we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama