885 So.2d 423 (2004)
Emilio CIRELLI, Jean L. Benson, etc., et al., Appellants,
v.
Hilda McDonald ENT, T. Murray McDonald, et al., Appellees.
No. 5D03-1493.
District Court of Appeal of Florida, Fifth District.
October 18, 2004.
*425 Stephen P. Sapienza, Bunnell, for Appellants.
Kim C. Booker of Booker & Associates, P.A., Orange City, for Appellees Kennedy.
Michael S. Orfinger of Smith, Hood, Perkins, Loucks, Stout & Orfinger, P.A., Daytona Beach, for Appellees McDonald.
Michael A. Van Houten of Van Houten & Ponder, P.A., Daytona Beach, for Appellees Ava & Rufus, Inc. and Whispering Creek Subdivision Homeowners Association, Inc.
Richard Prospect of Richard Prospect, P.A., Port Orange, for Appellees Cochrane.
No Appearance for other Appellees.
SAWAYA, C.J.
Appellants appeal from two partial summary final judgments  one in favor of the McDonalds and the other in favor of Ava & Rufus, Inc., Whispering Creek Subdivision Homeowners Association, Inc., the Kennedys, and the Cochranes.[1] Appellants, owners of landlocked property west of Port Orange, sued the adjoining property owners to establish a statutory way of necessity as defined in section 704.01(2), Florida Statutes, and lost when the trial court concluded that the Marketable Record Titles to Real Property Act (MRTA), Chapter 712, precluded their action.[2]
The issue we must resolve is whether MRTA applies to statutory ways of necessity under section 704.01(2), Florida Statutes (2002). We do not believe that the decision in H & F Land, Inc. v. Panama City-Bay County Airport & Industrial District, 736 So.2d 1167 (Fla.1999), which held that MRTA applies to common law ways of necessity, resolves the issue. We conclude that MRTA does not apply to statutory ways of necessity, and to explain why we have come to this conclusion, we will discuss in the following order 1) the *426 factual and procedural background of the instant case; 2) the decision in H & F Land and the differences between statutory and common law ways of necessity; 3) the public policy underlying the establishment of a statutory way of necessity; and 4) the requirements necessary to establish a statutory way of necessity under section 704.01(2), which clearly indicate that a statutory way of necessity is not the sort of claim MRTA is intended to extinguish.

Factual And Procedural Background
The McDonalds own the property to the east (Parcel A), south (Parcel B), and west (Parcel C) of Appellants' property. It appears to have been established below that the McDonalds also previously owned the property to the north of Appellants' property, but sold that land in the 1990's to Ava & Rufus, Inc., which developed that land into the Whispering Creek subdivision and sold lots to the Cochranes, the Kennedys, and others.
In their Second Amended Complaint, Appellants sought access to State Road 415 (Tomoka Farms Road) to the east of their landlocked property either by going directly across the McDonalds' property to the east or, alternatively, by crossing north over land in the Whispering Creek subdivision to access the subdivision roads, which lead to State Road 415.
In response to the complaint, the McDonalds filed the affidavit of William Akers, III, a thirty-year real estate attorney. Akers reviewed the complaint and the title search report relating to the McDonalds' property, explained how Parcels A, B, and C were deraigned, and concluded that the McDonalds or their predecessors had owned their property more than thirty years as of the time of the conveyance of the property to Appellants and that nowhere in the title to the McDonalds' property was there a recordation of any notice of the assertion of a statutory way of necessity or any other interest by any predecessors in interest of Appellants' land.
Based on Akers' affidavit and the deeds, the McDonalds moved for summary judgment, arguing that MRTA applied and precluded Appellants' action against the McDonalds' property. Under section 712.02, Florida Statutes, "when a person or his predecessors in title has been vested with any estate in land of record for 30 years or more, he shall have a marketable record title to such estate free and clear of all claims with the exceptions set forth in section 712.03." Holland v. Hattaway, 438 So.2d 456, 463 (Fla. 5th DCA 1983). Specifically, section 712.02, "Marketable record title; suspension of applicability," states:
Any person having the legal capacity to own land in this state, who, alone or together with her or his predecessors in title, has been vested with any estate in land of record for 30 years or more, shall have a marketable record title to such estate in said land, which shall be free and clear of all claims except the matters set forth as exceptions to marketability in s. 712.03. A person shall have a marketable record title when the public records disclosed a record title transaction affecting the title to the land which has been of record for not less than 30 years purporting to create such estate either in:
(1) The person claiming such estate; or
(2) Some other person from whom, by one or more title transactions, such estate has passed to the person claiming such estate, with nothing appearing of record, in either case, purporting to divest such claimant of the estate claimed.
The McDonalds explained that Appellants took title to the landlocked property *427 on October 24, 2000. The McDonalds then asserted the root of title to their own three parcels. The root of title, defined as "the last title transaction to have been recorded at least 30 years prior to the time when marketability is being determined," section 712.01(2), Florida Statutes, to the McDonalds' Parcel A was March 22, 1950; to Parcel B was April 28, 1944; and to Parcel C was April 28, 1944. Under MRTA, then, the McDonalds had marketable record title unless a statutory exception to MRTA, as provided in section 712.03, applied.
It is undisputed that no notice, pursuant to section 712.03(2), Florida Statutes (2002), was filed by Appellants or any of their predecessors in title at any time. In fact, Appellants adopted Akers' affidavit and deeds, stipulated that their land had been landlocked since 1916 (the original grant out of the state), agreed that there was no dispute about the root of title to the McDonalds' property, and expressly disavowed any claim of any exception under MRTA. Appellants' entire argument centers on their contention that MRTA is simply inapplicable to statutory ways of necessity. They acknowledge that H & F Land contains the statement that "we ... hold that statutory or common law ways of necessity are subject to the provisions of the Marketable Record Title[s] to Real Property Act (`MRTA')." H & F Land, 736 So.2d at 1170. They contend, however, that this was essentially dicta in that the remainder of the opinion addresses solely common law ways of necessity, which was the issue presented by the facts in that case.
We agree with Appellants that the reference to statutory ways of necessity in the opinion in H & F Land is dicta and therefore not binding precedent on this court. We will next proceed to discuss the decision in H & F Land and explain why we have come to that conclusion and why that decision is not applicable to the instant case.

H & F Land, Inc. v. Panama City-Bay County Airport & Industrial District
In H & F Land, the supreme court stated, "For the reasons that follow, we answer the certified question in the affirmative and hold that statutory or common law ways of necessity are subject to the provisions of the Marketable Record Title[s] to Real Property Act (`MRTA')." Id. at 1170. However, we believe that the reference to statutory ways of necessity is dicta for the following reasons: the certified question concerned only common law ways of necessity; the only issue raised by the parties concerned common law ways of necessity; the facts and legal analysis discussed in the opinion concerned only common law ways of necessity; and beyond the reference in the quoted sentence, statutory ways of necessity are never mentioned anywhere else in the opinion. Accordingly, the inclusion of statutory ways of necessity in the quoted statement is unnecessary to the resolution of the issue before the court and is therefore dicta and not controlling judicial precedent. The holding in H & F Land is inapplicable to the instant case because of the distinct differences between common law and statutory ways of necessity.
A common law way of necessity rests upon a legal fiction created to prevent property from being landlocked. This was explained by the court in Stein v. Darby, 126 So.2d 313 (Fla. 2d DCA), cert. denied, 134 So.2d 232 (Fla.1961):
The common law implication of the way of necessity contemplated a common source of title between the dominant and servient tenements and is predicated on the theory that when one deeds to another a parcel of land which is cut off by other lands of the grantor *428 or by lands of strangers from all access to public thoroughfares, the grantee is entitled to an easement of ingress and egress over the lands retained by his grantor. The way is said to arise from the presumed intention of the parties. The theory of the common law easement of a way of necessity appears to emanate from the rule that he who grants a thing to someone else is understood to grant that without which the thing could not be or exist.
Id. at 317 (footnotes omitted). Hence, a common law way of necessity provided for in section 704.01(1) "`arises when one grants a parcel of land surrounded by his other land, or when the grantee has no access to it except over grantor's other land or land of a stranger.'" Reyes v. Perez, 284 So.2d 493, 495-96 (Fla. 4th DCA 1973) (quoting 2 Thompson on Real Property § 362, pp. 413-15 (1961)). Therefore, because a common law way of necessity may arise prior to the root of title, a right to such an interest may be extinguished by MRTA. See H & F Land.
Because a common law way of necessity required a common source of title between the dominant and servient parcels, it became obvious that this requirement could not be met in all instances and many parcels of property would remain landlocked. Therefore, the Legislature enacted section 704.01(2) to provide relief in those instances where a common law way of necessity could not be obtained. A statutory way of necessity does not require a common source of title and is dependant upon the existence of numerous factors that are not necessary to the creation of a common law way of necessity. Moreover, public policy rather than legal fiction is the basic foundation for statutory ways of necessity under section 704.01(2).
Accordingly, we conclude that the decision in H & F Land is inapplicable to the instant case. We will next discuss the public policy upon which statutory ways of necessity are founded to explain our conclusion that MRTA does not apply to extinguish statutory ways of necessity created under section 704.01(2).

Public Policy
The Legislature's provision for statutory ways of necessity is rooted in public policy. Section 704.01(2), Florida Statutes (2002), provides in pertinent part:
STATUTORY WAY OF NECESSITY EXCLUSIVE OF COMMON-LAW RIGHT.  Based on public policy, convenience, and necessity, a statutory way of necessity exclusive of any common-law right exists when any land or portion thereof outside any municipality which is being used or desired to be used for a dwelling or dwellings or for agricultural or for timber raising or cutting or stockraising purposes shall be shut off or hemmed in by lands, fencing, or other improvements of other persons so that no practicable route of egress or ingress shall be available therefrom to the nearest practicable public or private road.
Unlike the common law way of necessity codified in section 704.01(1), Florida Statutes (2002), section 704.01(2) makes provision for the owner of the servient property to be compensated for the statutory way of necessity established across his or her property. This was not the case with the predecessor to section 704.01(2), and the courts therefore held the former version of the statute constitutionally invalid because it allowed the taking of private property without just compensation. See Stein. The statute was subsequently amended to include the requirement that the owner of the servient property be fairly compensated for a statutory way of necessity, and this cleared the way for the court's constitutional approval of the amended statute *429 now found in section 704.01(2). The discussion of the constitutional issues raised in the decisions that analyzed the amended version of section 704.01(2) is significant because it explains that the courts considered the establishment of a statutory way of necessity to be based on public policy and the need to fulfill a public purpose rather than a legal fiction similar to that which underpins a common law way of necessity.
In Stein, the court analyzed the amended version of section 704.01(2) to determine whether it violated the provisions of the Florida and federal constitutions that prohibited private property from being taken unless for a public purpose and for just compensation.[3] The court held that "[a] careful analysis of the statute compels the conclusion that the result contemplated thereby serves a public purpose as distinguished from a public benefit; that it provides a lawful means by which to accomplish full utilization of the state's natural resources, their development in the ordinary channels of commerce and industry." Stein, 126 So.2d at 316. The court explained that in order to accomplish this public purpose, the Legislature, in enacting section 704.01(2), provided for eminent domain proceedings that allowed the landlocked property owner the right to acquire a way of necessity over the servient property for just compensation:
Chapter 704, F.S.A. is devoted entirely to the subject of ways of necessity. A casual reading produces the inescapable conclusion that the legislature was not only cognizant of the common law rule governing the subject, which it specifically preserved, but also set about to implement the common law rule with a statutory proceeding in eminent domain by which to attain the desired public purpose in those situations where a common law way of necessity is not available.
....
F.S. Chapter 704, F.S.A. contemplates that a proceeding in eminent domain may be maintained for condemnation of an easement of necessity. As an incident to such proceedings the trial court unquestionably has the power, before submitting the cause to a jury for the purpose of awarding compensation, to require the production of such evidence as will enable it to determine whether the right of condemnation exists under the particular circumstances, and if so, the extent, location and other incidents of the easement essential to the function of the jury, or to the court where no jury is requested, in making the award of compensation.
Id. at 317, 321 (emphases added).
In Deseret Ranches, the court was confronted with an attempt by the plaintiff in the trial proceedings to acquire a statutory way of necessity pursuant to section 704.01(2). Specifically, the court addressed *430 dressed the issue whether the statute is unconstitutional because it violates article X, section 6(a) of the Florida Constitution, which provides in pertinent part that "[n]o private property shall be taken except for a public purpose and with full compensation therefor paid to each owner...." In holding the statute constitutional, the court stated:
The argument is that in contravention of the foregoing provision no purpose which is predominantly public is served by the taking of easements through operation of the statute. Although it is conceded that the statute provides a public benefit, it is argued that the benefit is incidental to a purpose which is predominantly private, that purpose being to provide a private land owner with conventional access to the outside world.
In 1961, before the adoption of the Florida Constitution of 1968, there was advanced in Stein v. Darby a similar argument against the statute, cast in terms of unconstitutionality under both the Florida Constitution of 1885 and the Fourteenth Amendment to the United States Constitution. After an excellent review of the common law history of the doctrine of ways of necessity, the Court concluded that the doctrine is grounded in the public policy against the loss of the use of landlocked property. As to the statutes' provision for ways of necessity, Stein stated,
"... we find no logic in the argument that the statute in question, which aids to render the earth from which all sustenance flows available to the uses of man, is unconstitutional as serving something other than a public purpose." 126 So.2d at 320.
Appellant contends that the intervening adoption of the 1968 Florida Constitution, including Article X, Section 6(a) and its "public purpose" requirement, mandates a different result from that reached in Stein and, Article X, Section 6(a) aside, that Stein was wrongly decided.
We agree with the reasoning in Stein and hold the statute constitutional under the present Constitution. The inverse of appellant's contention is true: the statute's purpose is predominantly public and the benefit to the private landholder is incidental to the public purpose.
Deseret Ranches, 349 So.2d at 156 (footnote omitted). The court then explained the theoretical moorings of the public policy in which a statutory way of necessity is rooted:
[S]ensible utilization of land continues to be one of our most important goals. We take notice that Florida grows in population at one of the fastest rates of any state in the nation. Useful land becomes more scarce in proportion to population increase, and the problem in this state becomes greater as tourism, commerce and the need for housing and agricultural goods grow. By its application to shut-off lands to be used for housing, agriculture, timber production and stockraising, the statute is designed to fill these needs. There is then a clear public purpose in providing means of access to such lands so that they might be utilized in the enumerated ways.
Id. at 156-57.
Hence, section 704.01(2) serves the legitimate public purpose of allowing access to landlocked property so that it may be transformed from useless and unproductive land into valuable and productive property that provides a residence to the owner or produces valuable raw materials such as timber or agricultural products. Moreover, turning fallow land into productive property promotes development *431 and, as courts in other jurisdictions have observed, increases tax revenues.[4] It is beyond any doubt that there is a vital public purpose served in granting access to individual property owners to the road and highway system of the county or state so that the property may be utilized and developed as a resource for the common good, whether residential, agricultural or otherwise. Failing to grant access to landlocked property that the owner needs or desires to use for the purposes stated in the statute may leave the landlocked owner at the mercy of the adjoining landowners who will then have the final say whether access will be granted. Unless these adjoining landowners are fair-minded individuals who will not request exorbitant compensation or simply deny access over their property, the property may be condemned to being forever landlocked and useless. This would be very bad public policy because it would do nothing to promote any beneficial public purpose and it is just what the Legislature intended to prevent when it enacted section 704.01(2).
The emphasis on public policy as the basis for the constitutional validity of the amended version of section 704.01(2) clearly reveals that the Legislature never intended that MRTA, whose foundational underpinning is the extinguishment of old and stale claims that adversely affect the marketability of title to the subject property, apply to extinguish the right to seek a statutory way of necessity. To hold otherwise would subvert the salutary public purpose section 704.01(2) was intended to promote.
Moreover, as will be discussed in the following section, analysis of the requirements necessary to establish a statutory way of necessity clearly indicates that such a claim is not the sort of claim MRTA is intended to extinguish. This argument is buttressed by the fact that the courts in Stein and Deseret Ranches reasoned that statutory ways of necessity are analogous to eminent domain proceedings.

The Requirements Necessary To Establish A Statutory Way Of Necessity Clearly Indicate That It Is Not The Sort Of Claim MRTA Is Intended to Extinguish
When the provisions of MRTA and the purpose for its enactment are considered in light of the requirements necessary to establish a statutory way of necessity, it becomes obvious that MRTA was never intended to extinguish such a claim. The Legislature clearly expressed that MRTA should be liberally construed and applied "to effect the legislative purpose of simplifying and facilitating land title transactions by allowing persons to rely on a record title as described in s. 712.02 subject only to such limitations as appear in s. 712.03." § 712.10, Fla. Stat. (2002). In ITT Rayonier, Inc. v. Wadsworth, 346 So.2d 1004 (Fla.1977), the court explained how the expressed purpose of MRTA is effectuated:
First, it gives to a person marketable title when public records disclose a title *432 transaction, of record for at least thirty years, which purports to create the estate either in that person or in someone else from whom the estate has passed to that person. Second, subject to six exceptions, it extinguishes all interests in the estate which predate the "root of title."
Id. at 1008-09 (footnotes omitted). Section 712.04, Florida Statutes, provides in pertinent part:
Subject to the matters stated in s. 712.03, such marketable record title shall be free and clear of all estates, interests, claims, or charges whatsoever, the existence of which depends upon any act, title transaction, event or omission that occurred prior to the effective date of the root of title.
§ 712.04, Fla. Stat. (2002) (emphasis added). Hence, the Legislature has clearly stated its intent that MRTA only extinguish interests in real property that existed prior to the root of title. The root of title is defined as "any title transaction purporting to create or transfer the estate claimed by any person and which is the last title transaction to have been recorded at least thirty years prior to the time when the marketability is being determined." § 712.01(2), Fla. Stat. (2002).
The courts that have interpreted and applied section 712.04 have consistently held, in accordance with the expressed legislative intent, that MRTA only applies to interests or claims that existed prior to the root of title. In Conservatory-City of Refuge, Inc. v. Kinney, 514 So.2d 377 (Fla. 2d DCA 1987), for example, the court held:
The MRTA extinguishes "all estates, interests, claims or charges whatsoever, the existence of which depends upon any act, title transaction, event or omission that occurred prior to the effective date of the root of title." § 712.04, Fla. Stat. (1985). [emphasis added][.] ... The deed the trial court found to be the root of title was recorded in 1956. Only interests in existence prior to 1956 could be extinguished by the MRTA.
Id. at 378; see also Holland v. Hattaway, 438 So.2d 456, 466 (Fla. 5th DCA 1983).
Pursuant to section 704.01(2), a statutory way of necessity comes into existence when the following are established: 1) the claimant's property is landlocked by property belonging to others;[5] 2) there is no practicable route of ingress or egress to the nearest public or private road;[6] 3) there is no right to a common law way of necessity under section 704.01(1) because there is no unity of title between the dominant (landlocked) and servient (adjoining) tracts;[7] 4) the landlocked property is situated outside a municipality;[8] 5) the landlocked property is being used or the owner desires to use the property as a dwelling or for agricultural, timber raising or cutting, *433 or stockraising purposes;[9] and 6) the statutory way of necessity sought over the adjoining parcel is the "nearest practicable route" of access.[10] Section 704.01(2) further provides that when these factors come into existence, "a statutory way of necessity exclusive of any common-law right exists...." § 704.01(2), Fla. Stat. (2003) (emphasis added). In other words, a statutory way of necessity comes into existence when these factors coalesce. §§ 704.01(2), .04, Fla. Stat. (2002); Parham v. Reddick, 537 So.2d 132 (Fla. 1st DCA 1988); Sapp v. General Dev. Corp., 472 So.2d 544 (Fla. 2d DCA 1985). If the owner of the servient property does not agree that a statutory way of necessity exists over his or her property or refuses to allow the landlocked owner to use it, the appropriate recourse available to either party is to seek a judicial determination of the existence of the claimed statutory way of necessity and the amount of compensation the landlocked owner owes for its use. § 704.04, Fla. Stat. (2002); Parham; Sapp. Once the way of necessity is established, either through agreement or judicial decree, the owner of the servient property may not arbitrarily block the use of the statutory way of necessity. Parham; Sapp. If the easement is awarded by the court and the amount of compensation is judicially determined, "[t]he easement shall date from the time the award is paid." § 704.04, Fla. Stat. (2002).
We believe that the right to a statutory way of necessity is a present right that comes into existence when the necessary factors exist. Therefore, because it is a present right, it is not a right, claim, or interest that would predate the root of title to the servient parcel of property and thereby be extinguishable by MRTA. In H & F Land, the court stated that the provisions of MRTA are intended to accomplish the objective of "stabilizing property law by clearing old defects from land titles, limiting the period of record search, and clearly defining marketability by extinguishing old interests of record not specifically claimed or reserved." Id. at 1171. In City of Miami v. St. Joe Paper Co., 364 So.2d 439 (Fla.1978), the court said that "[t]he Marketable Record Title Act is a comprehensive plan for reform in conveyancing procedures. It is a curative act in that it may operate to correct certain defects which have arisen in the execution of instruments in the chain of title." Id. at 442. The court quoted one treatise's description of the nature of MRTA as follows:
The chief purpose of the act is to extinguish stale claims and ancient defects against the title to real property, and, accordingly, limit the period of search.... The act also goes beyond a curative act. Curative legislation only corrects certain minor or technical defects through the passage of time, whereas under the Marketable Record Title Act, most defects or clouds on title beyond the period of 30 years are removed and the purchaser is made secure in his transaction.
Id. at 443 (quoting Catsman, The Marketable Record Title Act and Uniform Title Standards, § 6.2, in III Florida Real Property Practice (1965)) (emphases added). *434 In these and many other decisions,[11] the Florida courts have clearly held that MRTA applies to old, stale and ancient claims or interests that predate the root of title, not to present interests or claims such as a statutory way of necessity.
Moreover, the factors necessary to establish a statutory way of necessity have nothing to do with the title to the landlocked or servient property; rather, they come into existence through myriad circumstances brought about by any number of reasons, and it is often difficult to predict when these factors will occur. In some instances, when they do occur, circumstances may change that may alter or vitiate one or more of the factors, thus affecting the entitlement to a statutory way of necessity over a particular tract of servient property. In other words, these factors have nothing to do with a title-based claim to a right of access that can generally be determined by a search or examination of the title to the affected property and because there is no fixed time when the factors may come into existence, it may be impossible for the owners of the landlocked and servient parcels to know when an entitlement to a statutory way of necessity may come into existence. It then becomes difficult or impossible to know when the time limitation provided in MRTA will begin to run.
Appellants argue that a statutory way of necessity is analogous to eminent domain proceedings where the state is allowed, based on need and public policy, to take private property for just compensation at any time. While there are distinct differences between the sovereign's right to exercise its eminent domain powers and the right of a private citizen to acquire a statutory way of necessity over another's property, the latter is clearly analogous to the former. What is more important is the fact that the courts in Stein and Deseret Ranches have made the analogy. We also note that courts in other jurisdictions hold, based on the provisions of the pertinent statutory provisions dealing with ways of necessity, that obtaining a way of necessity over another's property is a form of eminent domain premised on public policy.[12] The analogy is significant because eminent domain is a present right that the sovereign *435 may exercise without time constraints imposed by a statute of limitations. Therefore, it is a claim or right that cannot predate the root of title to the property subject to the proceedings and it may not be extinguished by time limitations. These are the characteristics of proceedings to establish a statutory way of necessity under section 704.01(2). Because the analogous right to acquire property by eminent domain proceedings cannot be extinguished by MRTA, the right to acquire access to landlocked property via section 704.01(2) should likewise not be extinguished by MRTA.

Conclusion
For the reasons discussed, we conclude that the decision in H & F Land does not apply to the instant case. We also conclude that MRTA is not applicable to statutory ways of necessity. Therefore, we reverse the judgments under review and remand for further proceedings. We express conflict with the decision in Blanton v. City of Pinellas Park, 854 So.2d 729 (Fla. 2d DCA 2003), review granted, 870 So.2d 820 (Fla.2004).[13] We also certify to the Florida Supreme Court, as a matter of great public importance, the same question certified in Blanton:
DOES THE MARKETABLE RECORD TITLES TO REAL PROPERTY ACT, CHAPTER 712, FLORIDA STATUTES, OPERATE TO EXTINGUISH AN OTHERWISE VALID CLAIM OF A STATUTORY WAY OF NECESSITY WHEN SUCH CLAIM WAS NOT TIMELY ASSERTED UNDER THE PROVISIONS OF THAT ACT?
REVERSED and REMANDED.
SHARP, W. and TORPY, JJ., concur.
NOTES
[1] The McDonalds' motion for summary judgment was heard before the remaining appellees' motion was heard. Subsequently, a different trial judge entered summary judgment in favor of the remaining appellees. It should be noted that several parties named in the Second Amended Complaint, i.e., Volusia County, the St. Johns River Water Management District, and the Wheelers were not named in either partial final summary judgment.
[2] There are two "ways of necessity" recognized in section 704.01: the common law way of necessity described in section 704.01(1), otherwise known as the "implied grant of way of necessity," and the statutory way of necessity described in section 704.01(2). The statutory way of necessity is available only to landowners who do not qualify for a common law way of necessity. Boyd v. Walker, 776 So.2d 370 (Fla. 5th DCA 2001). Appellants do not attempt to assert a common law way of necessity and do not appear to qualify for one.
[3] Specifically, the defendant argued that the "statute violates Section 1, Declaration of Rights, F.S.A., and Section 29, Article XVI, of the Florida Constitution, F.S.A." Stein, 126 So.2d at 315. As Justice Sundberg noted in his dissent in Deseret Ranches of Florida, Inc. v. Bowman, 349 So.2d 155 (Fla.1977):

Article X, Section 6(a), is a brief restatement of Article XVI, Section 29, and the Declaration of Rights, Section 12, Florida Constitution of 1885. See commentary to Article X, Section 6, 26A Florida Statutes Ann. 479. The conditions of both the former and current constitutional mandates are the same. No private property shall be taken "except (i) for a public purpose (ii) and with full compensation therefor paid to each owner."
Id. at 157. Therefore, when the court in Deseret Ranches approved the reasoning in Stein, it did so by evaluating the pertinent constitutional provisions of the Florida Constitution of 1968, which have remained unchanged.
[4] Marinclin v. Urling, 262 F.Supp. 733 (W.D.Pa.), aff'd, 384 F.2d 872 (3d Cir.1967); Pratt v. Allen, 116 Misc.2d 244, 455 N.Y.S.2d 904 (N.Y.Sup.Ct.1982). In Marinclin, the court gave further reasons why granting access to landlocked property promotes the public purpose:

In addition, the use of a road laid out as a way of necessity could very well be deemed a public use since it is for the public benefit that every citizen should have the means of discharging his public duties, such as voting or attending court as a juror or witness, and because it affords higher assessments upon the landlocked property for municipal tax purposes. Also, it is in the public interest that police, firemen, and representatives of other public health, welfare and municipal agencies have access to the dwelling.
Marinclin, 262 F.Supp. at 736.
[5] Faison v. Smith, 510 So.2d 928 (Fla. 5th DCA 1987); see also Bell v. Cox, 642 So.2d 1381 (Fla. 5th DCA 1994), review denied, 654 So.2d 918 (Fla.1995).
[6] Faison; see also Bell.
[7] Boyd v. Walker, 776 So.2d 370, 370 (Fla. 5th DCA 2001) ("A landowner who has a common-law way of necessity under section 704.01(1) is ineligible for a statutory way of necessity under section 704.01(2).") (citing Reyes v. Perez, 284 So.2d 493 (Fla. 4th DCA 1973)); Hancock v. Tipton, 732 So.2d 369, 373 (Fla. 2d DCA 1999) ("To establish a statutory way of necessity, the owner of the landlocked parcel must show that the property is not served by a common law easement.") (citing Bell, 642 So.2d at 1384 ("Cox presented evidence and the record supports a finding that no common-law easement existed. There was no unity of title between the dominant and servient estate.")).
[8] Blue Water Corp. v. Hechavarria, 516 So.2d 17 (Fla. 3d DCA 1987).
[9] Blue Water; Hunt v. Smith, 137 So.2d 232, 233-34 (Fla. 2d DCA 1962) ("Thus, it may be seen from the language of the statute that the statutory way of necessity exists only when the lands are being used or desired to be used for the purposes specified in the statute.").
[10] § 704.01(2), Fla. Stat. (2002); see also Hoffman v. Laffitte, 564 So.2d 170 (Fla. 1st DCA 1990).
[11] See, e.g., Holland v. Hattaway, 438 So.2d 456, 466 (Fla. 5th DCA 1983) ("It has been said that the chief purpose of MRTA is to extinguish stale claims and ancient defects against the title to real property and accordingly, limit the period of title searches.") (footnote omitted); Travick v. Parker, 436 So.2d 957, 958 (Fla. 5th DCA 1983) ("MRTA `operates to correct defects in title by creating a marketable record title when the public records disclose a record title transaction affecting the title to the land which has been of record for not less than thirty years.'") (quoting Allen v. St. Petersburg Bank & Trust Co., 383 So.2d 1171 (Fla. 2d DCA 1980)).
[12] Ex parte Cater, 772 So.2d 1117 (Ala.2000); Tobias v. Dailey, 196 Ariz. 418, 998 P.2d 1091 (Ct.App.2000); Bear Creek Dev. Corp. v. Genesee Found., 919 P.2d 948, 951 (Colo.Ct.App.1996) (applying Colorado's state constitution, art. II, section 14, which provides that "[p]rivate property shall not be taken for private use unless by consent of the owner, except for private ways of necessity...."); Moore v. Dooley, 240 Ga. 472, 241 S.E.2d 232 (1978); MacCaskill v. Ebbert, 112 Idaho 1115, 739 P.2d 414 (Ct.App.1987); Pritchard v. Scott, 254 N.C. 277, 118 S.E.2d 890 (1961); Blankenship v. Bone, 530 P.2d 578 (Okla.Ct.App.1974); Hellberg v. Coffin Sheep Co., 66 Wash.2d 664, 404 P.2d 770 (1965); Kennedy v. Martin, 115 Wash.App. 866, 63 P.3d 866 (2003); Coronado Oil Co. v. Grieves, 603 P.2d 406 (Wyo.1979). Some courts in other jurisdictions also hold that defenses such as laches and statute of limitations do not apply to preclude a landlocked landowner from obtaining a way of necessity based on public policy preventing property from being landlocked in perpetuity. See Childers v. Quartz Creek Land Co., 946 P.2d 534 (Colo.App.Ct.1997), cert. denied, 525 U.S. 1104, 119 S.Ct. 869, 142 L.Ed.2d 771 (1999).
[13] In Blanton, the Second District Court affirmed a trial court's finding that a plaintiff's claim to a statutory way of necessity was time-barred in light of the holding in H & F Land. The court noted the fact that H & F Land stemmed from a claim of a common law way of necessity and the fact that the supreme court's reference to statutory ways of necessity appears only in the stated holding and, because of those facts, certified the question whether MRTA operates "to extinguish an otherwise valid claim of a statutory way of necessity when such claim was not timely asserted under the provisions of that Act?" Blanton, 854 So.2d at 731.