LOGUE, J.
The defendant, Brandon Thourtman, filed a petition for writ of habeas corpus challenging his confinement in the Miami-Dade County jail. The question presented concerns whether Article I, section 14 of the Florida Constitution prohibits a trial court from detaining a defendant beyond first appearance for a reasonable time pending an Arthur bond hearing unless the trial court makes a preliminary finding of "proof evident, presumption great."
By way of background, the Florida Constitution gives a person arrested for a crime the right to pretrial release on reasonable conditions such as bond, subject to certain exceptions. Art. I, § 14, Fla. Const. The "capital or life offense" exception applies when the person is charged with a crime punishable by capital punishment or life imprisonment and the State can demonstrate "the proof of guilt is evident or the presumption is great." Id. A person held under this exception is entitled to an adversarial, evidentiary bond hearing that examines the State's evidence to determine *729 if it rises to the level of "proof evident, presumption great." State v. Arthur, 390 So. 2d 717 (Fla. 1980). The parties agree that it is neither constitutionally required nor practical to hold the full Arthur bond hearing at first appearance, which occurs within 24 hours of arrest.
Here, the trial court at first appearance found probable cause that the defendant committed a crime punishable by capital punishment or life imprisonment. But the trial court did not make a preliminary finding of "proof evident, presumption great." Without such a preliminary finding, the defendant contends, Article I, section 14 prohibits his detention beyond first appearance, even for a reasonable time to conduct the Arthur bond hearing. In making this argument, he concedes that the State will in many cases be unable to meet the high standard of "proof evident, presumption great" at first appearance.
We are not persuaded by the defendant's argument. For the same reasons that it is not constitutionally required or practical to conduct a full Arthur hearing at first appearance, it is not constitutionally required or practical to hold a "preliminary" Arthur hearing at first appearance. Nothing in Article I, section 14 prohibits a trial judge at first appearance, upon finding probable cause that the defendant committed a crime punishable by capital punishment or life imprisonment, to defer ruling on a bond and to detain the defendant for a reasonable time necessary to conduct an Arthur bond hearing. To exercise such discretion, the court is not required by the Constitution to make a preliminary finding of "proof evident, presumption great." That issue is reserved for the Arthur hearing.[1]
FACTS
On November 9, 2018, the defendant was arrested for armed robbery with a firearm. The next day, November 10, 2018, the defendant made his first appearance. The defendant appeared by video from the jail. The matter was scheduled for an afternoon court calendar involving first appearances for approximately 40 defendants.
When the defendant's case was called, the court reviewed the arrest affidavit. In it, the arresting officer averred he obtained the following information from the investigating detective:
The victim is an overnight security [guard], who was working at the incident location, when the def[endant] approached her from the rear, as she sat in a golf cart. The def placed a firearm to the victims head (left side) and demanded that the victim lay on the ground. The victim in fear complied at which point the def asked the victim if she was armed. The victim advised the def that she was not. The def then patted the victim down removing a bus pass from her front shirt pocket. The def then grabbed the victim's purse and fled on foot with her property.
During the course of the investigation the def's identity was established. The victim positively identified the def from a photographic array.
On 11/9/2018 the defendant was apprehended by MDPD Officers Ortiz and Coello. A routine records check of the defendant revealed the P[robable] C[ause] message pursuant to this investigation. The defendant was arrested and transported to [the jail] without incident.
*730 Noting the defendant was charged with a crime punishable by life imprisonment, the court announced "no bond" at first appearance, thereby deferring the bond decision to the full Arthur hearing. In doing so, the trial court followed the standard practice taught to trial judges in Florida. See, e.g., Fla. Court Educ. Council, Criminal Benchguide for Circuit Judges at 7 (2016) ("In cases in which death or life imprisonment is a possible penalty, the first appearance judge, upon finding of probable cause, will typically order that the defendant be held with no bond. The defendant is then obligated to set the matter for an Arthur hearing."). Neither the defendant nor his attorney spoke. The hearing took less than two minutes.
On Friday, November 30, 2018, the defendant was arraigned. The State filed an information charging the defendant with one count of robbery using a firearm or deadly weapon, a first-degree felony punishable by life imprisonment. The defendant entered a plea of not guilty, propounded discovery, demanded a jury trial, and requested an Arthur hearing. The defendant also objected to being detained beyond first appearance without a preliminary finding of "proof evident, presumption great." The court overruled the objection. The court, the State, and the defendant then agreed to set the Arthur hearing on the following Thursday, December 6, 2018, four working days later. On Monday, December 3, 2018, the defendant filed this petition for habeas corpus.
On December 6, 2018, the court held the Arthur hearing as scheduled. The investigating detective testified. He authenticated the victim's December 5, 2018, written statement which was entered into evidence. He authenticated surveillance videos retrieved from the scene which showed the defendant fleeing with a purse. He testified that a GPS record, entered into evidence, revealed the victim's stolen cellphone was moved to the vicinity of the defendant's house after the robbery. He explained how the defendant, after signing a Miranda warning, confessed to the robbery but denied using a firearm. He also described the photographs, entered into evidence, which were used in a line-up where the victim identified the defendant.
At the end of the Arthur hearing, the court found the State's evidence that the defendant committed a robbery rose to the level of "proof evident, presumption great," but the State's evidence that the defendant used a firearm did not. Because unarmed robbery is not punishable by life, the court ordered the pretrial release of the defendant on house arrest with a $ 25,000 bond.
At the oral argument in this court, the defendant's counsel, an experienced assistant public defender, conceded three points. First, he conceded that "most often," in fact "in many, many cases," the State at first appearance will be simply unable to offer evidence rising to the level of "proof evident, presumption great" because the only proof normally available at first appearance is the arrest affidavit which, as here, consists of several levels of hearsay and shows little more than probable cause. Second, virtually always, the defendants at first appearance will also be unable to exercise their constitutional right to present evidence. Third, under existing law, the full Arthur hearing must be held - not at first appearance, which is impractical for both parties - but within a reasonable time.
ANALYSIS
A. Jurisdiction.
The trial court deferred ruling on the defendant's release at first appearance *731 and detained him until the Arthur hearing. After the Arthur hearing, however, the trial court granted bail and authorized the pretrial release of the defendant. This matter is therefore moot as to the defendant. This court was recently presented with an identical challenge, which became moot when the petitioner was granted pretrial release, and we dismissed the petition without opinion. Moore v. Junior, 3D18-2310, 2018 WL 7247150 (Fla. 3d DCA Dec. 3, 2018).
Now, however, with the defendant's petition presenting virtually identical facts and raising an identical issue, and the petition also becoming moot because bail was ultimately granted, we must acknowledge that "[b]ecause this petition presents a question capable of repetition yet evading review, this court has jurisdiction to hear the merits even if the petition is moot." Gould v. State, 974 So. 2d 441, 444 (Fla. 2d DCA 2007). See, e.g., Greenwood v. State, 51 So. 3d 1278, 1279-80 (Fla. 2d DCA 2011) (accepting jurisdiction "[e]ven though both defendants subsequently filed successful motions to reduce bond ... because the error is capable of repetition but evading review").
B. Article I, section 14 and its two exceptions.
Article I, section 14 of the Florida Constitution guarantees every person charged with a crime the right to pretrial release, with two exceptions: the "capital or life offense" exception and the "pretrial detention" exception. Article I, section 14 reads:
Unless charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident or the presumption is great, every person charged with a crime or violation of municipal or county ordinance shall be entitled to pretrial release on reasonable conditions. If no conditions of release can reasonably protect the community from risk of physical harm to persons, assure the presence of the accused at trial, or assure the integrity of the judicial process, the accused may be detained.
Art. I, § 14, Fla. Const.
The "capital or life offense" exception applies when a person is charged with a crime punishable by capital punishment or life imprisonment, and the State can demonstrate "the proof of guilt is evident or the presumption is great." The "pretrial detention" exception applies when, regardless of the level of crime charged, the State can demonstrate that no conditions of release will protect the community, ensure the presence of the accused at trial, or assure the integrity of the judicial process. This case concerns the "capital or life offense" exception but, as will be seen, the Supreme Court's rule-based interpretation of the time that the Constitution allows a defendant to be detained pending the hearing required under the "pretrial detention" exception will inform our discussion.
C. Defendant's Contention: Article I, section 14 creates a two-step procedure which begins with a preliminary finding of "proof evident, presumption great" at first appearance.
The defendant's argument is based on two recent cases by the Fourth District, Gray v. State, 257 So. 3d 477 (Fla. 4th DCA 2018) and Ysaza v. State, 222 So. 3d 3 (Fla. 4th DCA 2017). In both cases, the defendants were charged with crimes punishable by life imprisonment. Gray, 257 So. 3d at 478 ; Ysaza, 222 So. 3d at 5. At first appearance, the trial courts ordered each defendant detained pending the Arthur hearing. The trial courts declined to make a preliminary finding that the State's evidence rose to the level of "proof evident, presumption great." The defendants challenged their detention by filing petitions for writs of habeas corpus and arguing *732 "that the refusal to set bond or make the required findings violates [A]rticle I, section 14 of the Florida Constitution." Gray, 257 So. 3d at 478.
The Fourth District agreed in both cases. In Ysaza, the Fourth held that Arthur interpreted Article I, section 14 as establishing a two-step "procedure." Ysaza, 222 So. 3d at 6. The two steps in the procedure are: (1) "to hold the defendant without bond pending an Arthur hearing ... the first appearance judge [i]s 'required to find that the probable cause affidavit (or other materials before the court) establishe[s] that proof of guilt [i]s evident or the presumption [i]s great' "; and (2) "if the first appearance court finds that this standard has been met and declines to set bond, the defendant can later move to set bond and request a full Arthur hearing, where the defendant has a right to present evidence and to ask the court to exercise its discretion to set bond." Gray, 257 So. 3d at 478 (citing Ysaza, 222 So. 3d at 6 ).
Nevertheless, in both cases, the Fourth District ultimately denied the petitions. Rather than order the release of the defendants pending a full Arthur hearing, the Fourth District independently reviewed the arrest affidavits, and summarily concluded the arrest affidavits alone met the "proof evident, presumption great" standard. Gray, 257 So. 3d at 478 ; Ysaza, 222 So. 3d at 7.
D. Interpreting Article I, section 14 as creating a two-step procedure which begins with a preliminary finding of "proof evident, presumption great" represents a break with historical understanding.
At the outset, we note Ysaza and Gray's interpretation of Article I, section 14 as requiring two bond hearings including a preliminary finding at first appearance of "proof evident, presumption great" reflects a significant innovation in the understanding of Article I, section 14.
Versions of the "capital or life offense" exception of Article I, section 14 appeared as early as Florida's first constitution. Art. I, § 11, Fla. Const. (1838) ("That all persons shall be bailable, by sufficient securities, unless in capital offenses, where the proof is evident, or the presumption is strong."). Historically, it was understood that the defendant would exercise his or her right under this provision by filing an application for bail in which the defendant had the burden of proving the absence of "proof evident, presumption great." Russell v. State, 71 Fla. 236, 71 So. 27, 28 (1916).[2]
In 1982, the Supreme Court in Arthur overturned prior precedent and shifted the burden of proof from the defendant to the State. Arthur, 390 So. 2d at 717. However, it did not change the process whereby the hearing was triggered by the defendant making an application for bond. Id. Nor did it change (at least expressly) the existing law that a defendant could be detained pending the bond hearing on the issue of "proof evident, presumption great." Id.
After Arthur, the general understanding of Article I, section 14 remained that there occurred only one Arthur bond hearing and that the defendant could be detained a reasonable time past first appearance pending the hearing. This understanding was reflected in the benchguides prepared by Florida's most experienced trial judges, distributed throughout the judiciary by the court system, and issued after Arthur.[3]
*733 This understanding was followed by, for example, the trial judges in Ysaza, 222 So. 3d at 7, Gray, 257 So. 3d at 478, and Brackett v. State, 773 So. 2d 564, 565 (Fla. 4th DCA 2000) (noting "[b]ond was denied at the first appearance, pending a full [Arthur ] bond hearing").
Trial courts sometimes ventured to make a preliminary determination of "proof evident, presumption great" at first appearance (usually being reversed and ordered to conduct a full hearing, but not being ordered to release the defendant pending the hearing).[4] It was not until the 2017 Ysaza decision, however, that Article I, section 14 was expressly interpreted as requiring two Arthur hearings, one of which required a preliminary finding at first appearance of "proof evident, presumption great."
E. Interpreting Article I, section 14 as creating a two-step procedure which begins with a preliminary finding of "proof evident, presumption great" is not supported by the text of the constitution.
The text of Article I, section 14 does not support the new interpretation. Article I, section 14's requirement that the State show "proof evident, presumption great" obviously presupposes a hearing on that issue. But there is nothing in the text that requires both a preliminary Arthur hearing at first appearance and a subsequent full Arthur hearing, as held by Ysaza and Gray. Indeed, the reference in the text to "pretrial release" is best understood as referring to release - not for the time between arrest and the Arthur bond hearing - but for the time between the Arthur bond hearing and the trial. The right to "pretrial release" in Article I, section 14 refers to release pending trial, not to release pending a constitutionally or legally required bond hearing.[5]
Moreover, the text explicitly refers to "pretrial release on reasonable conditions." As the defendant agreed at oral argument, the text's silence regarding the timing of the required hearing means the Arthur hearing must be held within a "reasonable" time. See Kennedy v. Crawford, 479 So. 2d 758, 761 n.5 (Fla. 3d DCA 1985) ("Where a time period is not specified, courts will normally infer that a reasonable time was intended."); Weeks v. Fla. Birth-Related Neurological, 977 So. 2d 616, 619 (Fla. 5th DCA 2008) (holding "because the statute is silent on the time period within which notice must be furnished, under well-established principles of statutory construction, the law implies that the notice must be given within a reasonable time.").
The express reference to "reasonable conditions" and implied reference to "reasonable timing" are not a coincidence. Like other constitutional rights provided to criminal defendants, Article I, section 14 "represents a necessary accommodation between the individual's right to liberty and the State's duty to control crime." Gerstein v. Pugh, 420 U.S. 103, 112, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). Even as the United States Constitution's Fourth Amendment itself is interpreted, *734 Article I, section 14 must be given "a practical, nontechnical [interpretation] affording the best compromise that [can be] found for accommodating these often opposing interests." Gerstein, 420 U.S. at 112, 95 S.Ct. 854.
One such reasonable accommodation is to recognize that a trial judge has the discretion to detain a defendant accused of a crime punishable by capital punishment or life imprisonment for a reasonable time in order to conduct the hearing necessary to determine whether the defendant is entitled to be released under the "capital or life offense" exception. Certainly, nothing in the text supports Gray and Ysaza's holdings to the contrary.
Significantly, the Supreme Court has interpreted the text of the "pretrial detention" exception in Article I, section 14, which is the companion provision to the "capital or life offense" exception, to allow detention of the defendant for a reasonable time pending the evidentiary hearing required by that exception. Fla. R. Crim. P. 3.132.[6] Obviously, the Supreme Court could not allow such detention, even under its rule making authority, if Article I, section 14 prohibited it. If the text of Article I, section 14 does not prohibit detention for a reasonable time pending the hearing required by its "pretrial detention" exception, it follows that it also does not prohibit detention for a reasonable time pending the Arthur hearing required by the "capital or life offense" exception.
F. Interpreting Article I, section 14 as creating a two-step procedure which begins with a preliminary finding of "proof evident, presumption great" is impractical and leads to a Catch-22.
First appearance occurs within 24 hours of arrest. First appearance serves to inform the defendant of the charges against him and his rights. Because most defendants arrested in Florida have the right to post standard bail and bond out of custody without seeing a judge, first appearance also serves to deal with other, relatively simple matters, such as imposing mandatory stay-away orders.[7] It is also used to provide a non-adversarial, non-evidentiary review by a neutral magistrate of the probable cause to arrest and detain the defendant as required by Gerstein, 420 U.S. at 112, 95 S.Ct. 854.
In urban settings, first appearances occur on congested, fast-paced dockets. The court typically has before it only the arrest affidavit and the defendant's prior criminal record. Often, the defendant appears by video from jail. Defendants, of course, have a right to be heard, but experienced criminal lawyers and judges steer substantive motions relating to pretrial release to later, *735 less congested calendars. Greenwood, 51 So. 3d at 1281 (noting the "practical realities" stemming from "the significant number of defendants present at the typical first appearance hearing on any given day in a busy urban court"). Such substantive motions must be heard by the court "in person" and "promptly." Fla. R. Crim. P. 3.131(d)(1) & (2).
In contrast, an Arthur hearing focuses on a review of the State's evidence to determine if it rises to the level of "proof evident, presumption great" thereby justifying detention for the duration pending trial. This standard requires far more than probable cause: it requires proof "stronger than beyond a reasonable doubt." State v. Perry, 605 So. 2d 94, 96-97 (Fla. 3d DCA 1992). Under this standard, "[s]imply to present the indictment or information is not sufficient." Arthur, 390 So. 2d at 720. Instead, the State must present "further evidence" in the form of "transcripts or affidavits," such as "the evidence relied upon by the grand jury or the state attorney in charging the crime." Id. Moreover, at an Arthur hearing, the defendant is entitled to testify and call witnesses either to show the proof is not evident, nor presumption great or, even if the evidence rises to the level of "proof evident, presumption great," that other factors militate towards granting pretrial release. Id.
Given the high level of evidence needed to establish "proof evident, presumption great," and the summary nature and early timing of first appearances, it is simply impractical to hold even a preliminary Arthur hearing at first appearance. Within 24 hours of arrest, the State normally has not had time to marshal, document, and organize its evidence. Most often, the assistant State attorney who will prosecute has not been assigned. The information has not been drafted. Like the inchoate information itself, the "transcripts and affidavits" upon which the information will be based do not yet exist. The victim has not given a formal statement. Much of the physical evidence has not been collected, much less analyzed or tested. And the defendant, who was arrested only 24 hours before first appearance, has not had the time to prepare to allow him to meaningfully exercise his constitutional right to present evidence.
The facts of this case are typical in showing the difference between the evidence available at first appearance (conclusory hearsay within hearsay within hearsay) and the evidence available at the full Arthur hearing (testimony, sworn statements of victims and witnesses, the confession of the defendant, photographs, videos, GPS records, and other physical evidence). These facts illustrate how the same factors that prevent the State from making a full showing of "proof evident, presumption great" at first appearance (the prosecuting attorney not assigned, statements not taken, confessions not obtained, physical evidence not collected or analyzed) also prevent the State from making a "preliminary" showing of "proof evident, presumption great" at first appearance.
The defendant essentially admitted this fact at oral argument. He conceded that "most often," in fact "in many, many cases," the State will be simply unable to offer evidence rising to the level of "proof evident, presumption great" at first appearance.[8] This concession highlights the way the defendant is essentially asking us to read Article I, section 14 as a Catch-22.
Under the defendant's understanding of Article I, section 14, the State can *736 detain a person charged with a capital offense upon showing of "proof evident, presumption great," but that showing must occur "preliminarily" within 24 hours of arrest when, the defendant conceded, the State will not normally be ready to meet that standard. But it gets more Kafkaesque. The defendant is therefore entitled to release pending the Arthur hearing. But once the defendant is granted pretrial release, the State can only seek to modify the terms of release by showing changed circumstances. Saravia v. Miami-Dade Cty., 129 So. 3d 1163, 1165 (Fla. 3d DCA 2014). Thus, under the defendant's interpretation, the defendant must be released pending an Arthur hearing, but once the defendant is released, an Arthur hearing cannot normally be held. As Yosarian says in the novel, "[t]hat's some catch, that Catch-22." Joseph Heller, Catch-22 56-57 (Alfred A. Knopf, Inc. 1995).
Keeping in mind that this exception applies to defendants for which there is probable cause of guilt of a crime punishable by capital punishment or life imprisonment, we have no doubt that imposing such an unrealistic burden on the trial court's discretion to detain the defendant would inevitably have the unintended consequence of causing the existing high standard required for "proof evident, presumption great" to lapse into simple probable cause.
G. The Supreme Court in Arthur did not interpret Article I, section 14 as creating a two-step procedure which begins with a preliminary finding of "proof evident, presumption great."
The defendant's main argument is that, regardless of the textual and practical difficulties, the Supreme Court in Arthur interpreted Article I, section 14 as creating the two-step procedure. In so interpreting Arthur, however, the defendant (and Ysaza, Gray, and the dissent) focus only on one sentence from the opinion, namely: "[w]e hold, therefore, that before release on bail pending trial can ever be denied, the state must come forward with a showing that the proof of guilt is evident or the presumption is great." Arthur, 390 So. 2d at 720.
According to the defendant, the Supreme Court's use of the word "ever" in stating the State must carry the burden of showing "proof evident, presumption great," "before release on bail pending trial can ever be denied" indicates the adoption of an interpretation of Article I, section 14 as (1) prohibiting the trial court from detaining the defendant pending the Arthur hearing without a preliminary finding of "proof evident, presumption great," and (2) if such a preliminary finding is made, providing the defendant a subsequent full Arthur hearing after the defendant has had time to fully prepare.
When properly read in context, however, this sentence does not support the inferences that the defendant draws from it. Moreover, if interpreted in such a manner, the sentence would comprise nothing more than classic obiter dicta. While the Court undoubtedly has authority to promulgate a rule providing for the elaborate two-hearing procedure that defendant reads into this sentence, it did not do so in Arthur. Such a procedure was simply never raised *737 by the facts, implicated by the certified questions, or discussed in Arthur.
In Arthur, the defendant was charged with several life felonies. After he was arrested, he filed a motion to set bond. The trial court conducted a full bond hearing regarding "proof evident, presumption great" pursuant to Article I, section 14 (what we would now label a "full" Arthur bond hearing). After the hearing, the trial court denied bail. Once the State made a showing of "proof evident, presumption great," it held, the trial court lacked discretion to grant pretrial release. Also, in conformity with controlling precedent at the time, the trial court determined that the filing of the indictment shifted the burden of proof on the issue of "proof evident, presumption great" from the State to the defendant.
The district court reversed the trial court on the first issue but upheld the trial court on the second issue. The district court then certified the two issues:
1. Does a trial court have discretion to grant bail to a defendant who is charged with a capital offense or an offense punishable by life imprisonment and the proof of guilt is evident and the presumption great?
2. Does the accused or the state, in a capital case or a case involving life imprisonment where the accused is seeking to be admitted to bail, have the burden of proof on the issue of whether the proof of guilt is evident and the presumption great?
Arthur, 390 So. 2d at 717. The Supreme Court answered the first question in the affirmative and answered the second question by holding the State has the burden of proof. Id. It is within this context that we must examine the sentence relied upon by the defendant.
The sentence relied upon by the defendant was made to answer the second certified question. According to the Supreme Court, this certified question raised the issue "as to whether the indictment or information should be deemed to raise a prima facie showing, shifting to the defendant the burden of proving that the proof of guilt is not evident and the presumption not great." Id. at 719. The Supreme Court noted that "[t]he district court followed precedent and held that the indictment shifts the burden to the defendant." Id. Nevertheless, the Supreme Court overruled the existing precedent and reversed because "[i]t should be the state's burden to prove facts which take away the entitlement to bail provided for by Article [I], section 14." Arthur, 390 So. 2d at 719-20. The Supreme Court held "as a matter of convenience, fairness, and practicality, it is preferable that the state have the burden of coming forward when the accused seeks release on bail." Id. at 720.
When placed in proper context, therefore, the Supreme Court's sentence that "before release on bail pending trial can ever be denied, the state must come forward with a showing that the proof of guilt is evident or the presumption is great" does not support the inferences that the defendant cannot be detained pending the Arthur hearing and that the defendant is entitled to both a "preliminary" and "full" Arthur hearing. Such inferences were not related to the question before the Court. Instead, the sentence was intended to squarely place the burden of proving "proof evident, presumption great" on the State and ensure the burden never shifted to the defendant. The defendant grossly misreads the sentence by taking it out of context.
Moreover, the defendant's misreading makes the sentence obiter dicta. Dicta includes statements in an opinion not *738 raised by the facts,[9] not related to the certified questions,[10] and not the subject of analysis or discussion.[11] The issue of the detention of the defendant pending the Arthur hearing was not related to either of the two certified questions. It was not discussed or analyzed in the opinion. Indeed, the issue of the defendant's detention at first appearance pending the bond hearing did not even exist under the facts of Arthur. Arthur arose after a full bond hearing on the merits: it did not involve a first appearance. Id. at 717. The phrase "first appearance" and the word "hearing" are never used in the opinion. In fact, although the Supreme Court reversed and ordered a new Arthur hearing, the court did not order the release of the defendant, because the release of the defendant pending the Arthur hearing was simply not at issue.
This conclusion is particularly inescapable here because the sentence relied upon by the defendant comes from a passage in Arthur that includes another statement that has already been held to be dicta for the same reason. In a statement occurring one sentence away from the one relied upon by the defendant, the Supreme Court described the burden: "The state's burden, in order to foreclose bail as a matter of right, is to present some further evidence which, viewed in the light most favorable to the state, would be legally sufficient to sustain a jury verdict of guilty." Id. at 720.
This statement, of course, reduces the "proof evident, presumption great" standard to mere probable cause. Obviously, if read as binding authority, this sentence would eviscerate the defendant's entire argument because the arrest affidavit clearly met this lower standard. This statement, however, has been recognized as dicta because the issue of reducing the standard was not raised by the facts of the case, was not one of the two certified questions the court addressed, and was nowhere discussed in the opinion. Preston, 133 So. 3d at 1226 (holding "the observation [in Arthur ] that the State's proof must be legally sufficient [only] to sustain a guilty verdict certainly must be treated as dicta" because the Supreme Court in the opinion "did not indicate that it intended to change this entrenched rule, or explain the court's reason for doing so, and indeed that question was not at issue in the case."); Perry, 605 So. 2d at 99 (describing the statement in Arthur which lowers the standard as "dicta" because there was no discussion or rationale for it in the opinion).
By the same reasoning, any interpretation of the first sentence as requiring a showing of "proof evident, presumption great" at first appearance in order to detain the defendant a reasonable time pending the Arthur hearing would also constitute dicta. The discretion to detain the defendant after first appearance to conduct the Arthur hearing was not raised by the facts in Arthur, was not implicated in either of the two certified questions addressed *739 in Arthur, and was not analyzed or discussed in Arthur.
H. Although reached in good faith, the dissent's solution is logically inconsistent.
We respect the dissent's judicial statesmanship in attempting to find a middle ground whereby Ysaza and Gray could be upheld and yet an avenue recognized for the Supreme Court to correct the resulting textual and practical difficulties. But the solution fashioned by the dissent is logically inconsistent.
On one hand, the dissent agrees with Ysaza and Gray and that Article I, section 14 prohibits a trial court from holding a defendant pending the Arthur hearing without making a finding of proof evident presumption great at first appearance. On the other hand, the dissent maintains the Supreme Court can authorize such detention by rule. Obviously, however, the Supreme Court's rulemaking authority is itself subject to the Constitution. See, e.g., State v. Furen, 118 So. 2d 6, 12 (Fla. 1960). If Ysaza and Gray are correct that Article I, section 14 prohibits such detention, the Supreme Court cannot authorize it by rule.
CONCLUSION
For these reasons, we hold that Article I, section 14 of the Florida Constitution does not prohibit the trial court the discretion at first appearance, upon a finding of probable cause that the defendant committed a crime punishable by capital punishment or life imprisonment, to defer ruling on bail and to detain the defendant for a reasonable time to conduct a full Arthur bond hearing. To exercise such discretion, the court is not required by the Constitution to make a preliminary finding of "proof evident, presumption great." As the Supreme Court ruled in Arthur, that issue is reserved for the full Arthur bond hearing. We certify conflict with Ysaza and Gray which held to the contrary.
Petition denied.
HENDON, J., concurs.

In this case, the defendant did not contend his Arthur hearing took place outside a reasonable time. The issue of what constitutes a reasonable time within which to conduct an Arthur hearing is therefore not before us.

See, e.g., Mathis v. Starr, 152 So. 2d 161, 161 (Fla. 1963) ; State ex rel. Freeman v. Kelly, 86 So. 2d 166, 166 (Fla. 1956) ; Ex parte Nathan, 50 So. 38, 39 (Fla. 1908).

See, e.g., Fla. Court Educ. Council, Criminal Benchguide for Circuit Judges at 7 (2016) ("In cases in which death or life imprisonment is a possible penalty, the first appearance judge, upon finding of probable cause, will typically order that the defendant be held with no bond. The defendant is then obligated to set the matter for an Arthur hearing."); Fla. Court Educ. Council, Criminal Benchguide for Circuit Judges at 7 (2010) (same).

See cases cited at note 8, infra.

For example, many defendants can bond out of jail by posting standard bail without waiting for first appearance. But it has never been held that requiring certain defendants by law to be detained until first appearance implicated rights under Article I, section 14. See footnote 7, infra.

Specifically, the Supreme Court has interpreted the "pretrial detention" exception to allow the trial court to detain the defendant for a maximum of 10 days after first appearance to conduct the required hearing, subject to specific conditions and strict limits on continuances "unless the delay is sought by the defendant." Fla. R. Crim. P. 3.132(c)(1).

Judicial Circuits have uniform bail bond schedules for persons who decide to immediately bond out of jail without seeing a judge. These schedules are often promulgated by circuit court administrative orders. See, e.g., Admin. Order S-2018-022, Uniform Bail Bond Schedule (Fla. 13th Cir. June 27, 2018); Admin. Order 2018-019 PA-Cir, Uniform Bail Bond Schedule (Fla. 6th Cir. Apr. 25, 2018); Admin. Order 2013-11.3, Uniform Bail Bond Schedule (Fla. 12th Cir. June 28, 2013). But persons charged with certain offenses are required by law to appear in court at first appearance before bail can be granted, often to allow the court to subject the defendant to a stay-away order. § 741.2901, Fla. Stat. (domestic violence); § 825.1035(11)(b), Fla. Stat. (violation of injunction for protection of vulnerable adult); § 903.046, Fla. Stat. (sexual offender); § 947.141, Fla. Stat. (state supervised offender). Persons who seek pretrial release without posting bond must also appear in court.

Indeed, where trial courts attempted to find "proof evident, presumption great" at first appearance, they have been routinely reversed with instructions to hold a full evidentiary hearing (without instructions to release the defendant pending the hearing). Preston v. Gee, 133 So. 3d 1218 (Fla. 2d DCA 2014). See also Cooper v. Gee, 162 So. 3d 998 (Fla. 2d DCA 2014) ; Hardy v. Gee, 150 So. 3d 1144 (Fla. 2d DCA 2014) ; Morales v. Gee, 149 So. 3d 15 (Fla. 2d DCA 2014) ; Maldonado v. Gee, 149 So. 3d 14 (Fla. 2d DCA 2014) ; Reid v. Gee, 149 So. 3d 15 (Fla. 2d DCA 2014) ; Diaz v. Gee, 149 So. 3d 11 (Fla. 2d DCA 2014) ; Brown v. Gee, 149 So. 3d 10 (Fla. 2d DCA 2014) ; McCants v. Gee, 149 So. 3d 14 (Fla. 2d DCA 2014) ; Carrion v. Gee, 149 So. 3d 10 (Fla. 2d DCA 2014).

"One of the basic principles of appellate law is that the holding of a decision cannot extend beyond the facts of the case." Miccosukee Tribe of Indians v. Lewis Tein, P.L., 227 So. 3d 656, 661 (Fla. 3d DCA 2017).

See, e.g., Cirelli v. Ent, 885 So. 2d 423, 427 (Fla. 5th DCA 2004) (deciding that the Supreme Court's inclusion of statutory ways of necessity in its holding was dicta because "the certified question concerned only common law ways of necessity" and "the facts and legal analysis discussed in the opinion concerned only common law ways of necessity").

See, e.g., Rey v. Philip Morris, Inc., 75 So. 3d 378, 381 (Fla. 3d DCA 2011) ("No Florida appellate decision "is authority on any question not raised and considered.") (citation omitted).